JAMES CARROLL, APPELLEE, V. CHASE COUNTY, A POLITICAL
SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT.
612 N.W. 2d 231

Filed June 23, 2000.    No. S-99-092.

Thomas J. Culhane and Patrick R. Guinan, of Erickson & Sederstrom, P.C., for appellant.

Katherine R. Hall and, on brief, Frankie J. Moore, of McCarthy, Gale, Moore & Hall, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This is a negligence action originally filed by Walter Carroll, as natural parent and next friend of James Carroll, against Chase County, under the Political Subdivisions Tort

Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991 & Cum. Supp. 1994). Walter sought damages for personal injuries James sustained in an accident involving a pickup truck James was driving and a road maintainer owned by Chase County and operated by an employee of Chase County, Jonnie L. Ourada. The trial court found that the sole proximate cause of the accident was the negligence of Chase County and that James was not negligent in any manner. At the beginning of trial, James was substituted as the plaintiff in this case because he has reached the age of majority. On our own motion, we removed the matter to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

## BACKGROUND

James was injured in an automobile accident on a county road in Chase County on October 4, 1995. James has no memory of the accident. James, who was 17 years old at the time, was driving the pickup truck west on a section of a county road commonly known as McCallum Hill. McCallum Hill is an east-west running gravel road north of Wauneta, Nebraska, which road is intersected by the Hayes County-Chase County line. Approaching McCallum Hill from the east heading west, the road slopes gradually upward to the crest of the hill. At the crest of the hill, the road becomes fairly steep and continues to descend straight west.

On the date of the accident, Ourada was operating the road maintainer on the west side of McCallum Hill, which was located in Chase County. During that afternoon, Ourada was doing maintenance work on the north and south shoulders of the road from the crest of McCallum Hill westward down the hill for approximately 100 yards. Ourada began the shoulder work around noon that day and started with the south side of the road, or the eastbound lane of traffic. The shoulder work consisted of hauling dirt from the ditches and up onto the road, which Ourada described as "wind rowing" the dirt over the shoulder, blading the dirt out evenly over the road, and then wheel-packing the loose dirt by driving over it back and forth with the maintainer.

After completing the work on the south shoulder, Ourada moved his maintainer to the north side of the road, or the westbound lane of traffic. In order to get into position on the north shoulder, Ourada had to turn the maintainer around by driving it eastward over McCallum Hill, turning into a field entrance, backing the maintainer out onto the road, and then driving west up McCallum Hill. Facing west, Ourada began the same procedure of hauling dirt from the ditch, blading it out, and then wheel-packing the loose dirt. Ourada worked on the north side of the road from the crest of the hill westward down the hill for approximately 100 yards, just as he had done on the south side of the road. Ourada then would back the maintainer up to the crest of the hill and resume blading the road westward down the hill, rather than continually turning the maintainer around each time he made a pass at the ditch or wheel-packed the loose dirt.

Prior to starting the shoulder work that afternoon, Ourada placed a sign approximately 500 feet east of the crest of McCallum Hill. The sign, mounted on a tripod and placed on the north shoulder of the road for westbound traffic to see, read "Road Construction 500 F[ee]t." A sign which read "Caution" was wired below the "Road Construction 500 F[ee]t" sign. Because of the windy conditions that existed on the day of the accident, the sign blew over during the day, and Ourada put it back up two to three times. On one of the occasions in which Ourada reset the sign, he noticed that the wire holding the "Caution" sign to the other sign had broken and that the "Caution" sign was lying front side down. Ourada left the "Caution" sign lying down on the shoulder of the road.

At the time of the accident, Ourada was in the westbound lane of traffic with the front of the maintainer facing west, backing up McCallum Hill to the east. Although Ourada testified that he was alternating his view from west to east while the maintainer traveled backward, he was looking west at the time of the accident. The evidence adduced at trial showed that at the time of the accident, James was traveling west at 45 to 51 miles per hour when he crested McCallum Hill. The posted speed limit was 50 miles per hour. The evidence also showed that James reacted within 2 seconds of first seeing the maintainer and applied his

brakes, skidding for 183 feet before running into the back of the maintainer. At the point of impact, Ourada was standing up in the cab of the maintainer, and Ourada was thrown against the back window of the cab.

Upon impact, Ourada did not realize that James' pickup truck had struck his maintainer. Rather, he thought that his maintainer had experienced some mechanical problems. After the impact and before Ourada realized what had happened, the maintainer continued to back up approximately 6 to 8 feet before Ourada stopped the maintainer from moving.

At trial, it was undisputed that Chase County had adopted the standards from the "Manual on Uniform Traffic Control Devices" regarding streets and highways to determine the type of signage used in road maintenance and that at the time of the accident, Ourada was unaware that such a manual even existed. It was also undisputed that the signage standards adopted in the manual were not strictly adhered to. The evidence further indicated that Ourada had never been trained or instructed on what signs were to be used in certain situations and that he had been told by a coworker simply to "put up a sign" when working on a hill.

The trial court found in favor of James. Specifically, it found:
> [James] was not negligent in any manner, and that the sole proximate cause of the accident was the negligence of [Chase County]. [Chase County] was negligent in failing to use appropriate signs to warn the traveling public of the road maintenance operation, in failing to properly train [Ourada] with regard to the proper signage, and in [Ourada's] proceeding backwards up the hill and not maintaining a proper lookout. The negligence of [Chase County] was the sole proximate cause of the accident and the damages suffered by [James].

The trial court awarded James $61,586.80 for past and future medical expenses and $200,000 as general damages for pain and suffering, past and future; loss of wages; and permanent disability.

Chase County filed a motion to set aside judgment or, in the alternative, a motion for new trial. The trial court overruled the motions.

## ASSIGNMENTS OF ERROR

Chase County assigns that the trial court erred in (1) finding that James was not contributorily negligent as a matter of law, (2) failing to grant Chase County's motion to dismiss at the close of the evidence, and (3) failing to grant Chase County's motion for new trial. Chase County also contends that the trial court's decision and findings are not supported by the evidence and are clearly wrong.

## SCOPE OF REVIEW

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Baldwin v. City of Omaha*, 259 Neb. 1, 607 N.W.2d 841 (2000); *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998).

## ANALYSIS

Chase County argues that the trial court erred in finding that James was not contributorily negligent. Specifically, Chase County contends that James was contributorily negligent in failing to slow down while cresting McCallum Hill as he customarily did and that had he done so, he could have avoided the accident. In making such an argument, Chase County relies on Walter's testimony that James had driven McCallum Hill at least 12 to 15 times prior to the accident and James' testimony that he agreed with Walter's statement. James also testified that he had ridden over McCallum Hill as a passenger a countless number of times. The evidence also indicated that James was familiar with the road, knew that the west side of McCallum Hill was very steep, and also knew that as he headed west toward the crest of the hill, he could not see over it. Chase County also relies on James' testimony that he usually slowed down while cresting McCallum Hill "because you never know what's going to be coming." Chase County further relies on the testimony of Lisa

Kerchal and Keith Kerchal, who were both familiar with McCallum Hill, and testified that they usually slowed down when cresting McCallum Hill. Chase County contends that based on this evidence, the trial court erred in finding that James was not contributorily negligent.

A plaintiff is contributorily negligent if (1) he or she fails to protect himself or herself from injury, (2) his or her conduct concurs and cooperates with the defendant's actionable negligence, and (3) his or her conduct contributes to his or her injuries as a proximate cause. *Baldwin v. City of Omaha, supra*; *Humphrey v. Burlington Northern RR. Co.*, 251 Neb. 736, 559 N.W.2d 749 (1997). Any contributory negligence chargeable to a claimant shall diminish proportionately the amount awarded as damages for an injury attributable to the claimant's contributory negligence but shall not bar recovery, except that if the contributory negligence of the claimant is equal to or greater than the total negligence of all persons against whom recovery is sought, the claimant shall be totally barred from recovery. Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995).

The trial court found that James was, just prior to the accident, operating his pickup truck at a speed that was reasonable and prudent at the time, 50 miles per hour, and that this speed was the posted speed limit on the road where the accident occurred.

Neb. Rev. Stat. § 60-6,185 (Reissue 1998) provides:

> No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. A person shall drive at a safe and appropriate speed . . . when approaching a hillcrest . . . and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

Chase County's expert witness, James Summers, concluded that James was driving the pickup truck between 43 and 51 miles per hour immediately prior to applying his brakes as he crested McCallum Hill, with 50 miles per hour being the posted speed limit. Summers also testified that assuming James was going 51 miles per hour, the most time that could have elapsed between James' seeing any part of the maintainer and the start

of the skid left by James in applying his brakes was 2 seconds. There was sufficient evidence from which the trial court could and did find that James was driving within the posted speed limit of 50 miles per hour. The evidence regarding James' reaction time creates a reasonable inference that he was maintaining a proper lookout.

The evidence also indicates that James' speed was reasonable under the conditions that existed at the time of the accident. The accident happened during the daylight hours and there were no adverse weather conditions present on the day of the accident. In addition, there were no visible obstructions or maintenance-related activity within 500 feet of the warning sign.

The issue of whether James was negligent in not reducing his speed at the crest of McCallum Hill was an issue of fact, which was resolved against Chase County by the trial court.

Although James was familiar with McCallum Hill and had driven over it many times, there was no evidence to indicate he had ever encountered any type of vehicle traveling in the same lane as he, in the opposite direction of travel. Nor was there any evidence to indicate he should have anticipated the maintainer in his lane of traffic traveling against traffic. The trial court made no finding as to whether the "Road Construction 500 F[ee]t" sign was up or down at the time of the accident. However, even if the sign was up at the time of the accident, there was no road construction or maintenance-related activity within 500 feet of the warning sign. The posted sign did not give James any reason to believe that there would be a piece of road machinery operating in his lane against the flow of traffic just over the crest of McCallum Hill.

The testimony of Lisa Kerchal and Keith Kerchal does not demonstrate that James' actions were negligent. Lisa Kerchal testified that she probably drove about 40 miles per hour at the crest of McCallum Hill "because you don't know what's coming up the hill" in the opposite direction. However, she also testified that "usually you can run around 50 [miles per hour] on the dirt roads." Keith Kerchal testified that his usual speed over McCallum Hill from the east varied, depending on whether he was in a hurry, and that "most people are driving right close" to the 50-mile-per-hour speed limit, "but then they usually slow up about the crest of the

hill." The testimony of Lisa Kerchal and Keith Kerchal does not demonstrate that James' speed was unreasonable.

The evidence indicates that James was operating the pickup truck within the speed limit at a safe and appropriate speed, maintained a proper lookout, and conducted himself in a reasonable and prudent manner. Considering all the evidence in a light most favorable to James and giving every inference which can reasonably be deduced from such evidence to James, we cannot say that the trial court was clearly wrong when it found that James was not negligent in any manner.

■ The above analysis does not cover Chase County's assignments of error other than its assignment that relates to contributory negligence because the other assignments of error were not discussed in Chase County's brief. Not only must a claimed prejudicial error be assigned, it must also be discussed in the brief of the asserting party; an appellate court will not consider assignments of error which are not discussed in the brief. *In re Interest of Rachael M. & Sherry M.*, 258 Neb. 250, 603 N.W.2d 10 (1999); *Varela v. Fisher Roofing Co.*, 253 Neb. 667, 572 N.W.2d 780 (1998).

## CONCLUSION

The evidence demonstrates that James was driving in a reasonable and prudent manner immediately prior to the accident. The trial court was not clearly wrong in finding that James was not contributorily negligent.

AFFIRMED.