J.B. CONTRACTING SERVICES, INC., A NEBRASKA
CORPORATION, APPELLEE, AND NEBRASKA BEEF, LTD.,
A NEBRASKA LIMITED PARTNERSHIP, AS ASSIGNEE OF
J.B. CONTRACTING SERVICES, INC., APPELLANT,
v. UNIVERSAL SURETY COMPANY,
A NEBRASKA CORPORATION, APPELLEE.

624 N.W.2d 13

Filed April 6, 2001. No. S-00-041.

William M. Lamson, Jr., and Robert A. Mooney, of Lamson, Dugan & Murray, L.L.P., and, on brief, Cletus W. Blakeman and David A. Domina, of Domina Law, P.C., for appellant.

David A. Hecker, of Kutak Rock, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

STEPHAN, J.
Nebraska Beef, Ltd., as the assignee of J.B. Contracting Services, Inc. (J.B. Contracting), asserted claims in this action against Universal Surety Company (Universal) based upon a performance bond pursuant to which ABC Electric, Inc., as principal, and Universal, as surety, undertook certain obligations to J.B. Contracting in connection with a construction project on property owned by Nebraska Beef. The district court for Douglas County sustained Universal's demurrer, denied leave to amend, and dismissed the action. Nebraska Beef perfected this timely appeal which we moved to our docket on our own motion pursuant to our authority to regulate the dockets of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). We affirm the judgment of the district court.

## BACKGROUND

### FACTUAL ALLEGATIONS

We summarize the facts alleged by Nebraska Beef in its petition as follows: On or about April 28, 1995, Nebraska Beef, a Nebraska limited partnership, engaged J.B. Contracting to provide construction management and general contractor services in connection with the remodeling and expansion of facilities located at 4501 South 36th Street in Omaha, Nebraska, which were owned by Nebraska Beef. On or about that same date, J.B. Contracting entered into a "Standard Sub-Contract Agreement" with ABC Electric, an Iowa corporation. Under this subcontract, ABC Electric was to provide labor and material for the project. Pursuant to the subcontract, ABC Electric was required to obtain, effect, maintain, and furnish a performance bond to J.B. Contracting. On May 16, Universal, a Nebraska corporation, executed and delivered to J.B. Contracting a "Subcontract

Performance Bond Form A" that designated ABC Electric as principal, Universal as surety, and J.B. Contracting as obligee.

Nebraska Beef alleged that while J.B. Contracting complied at all times with its obligations under the subcontract, ABC Electric failed to perform its obligations in a timely and workmanlike manner. Thereafter, J.B. Contracting timely notified ABC Electric and Universal of ABC Electric's failure to perform its obligations. On November 15, 1995, both J.B. Contracting and Nebraska Beef sent a letter to ABC Electric and Universal specifically identifying ABC Electric's failure to perform. This letter was received by ABC Electric and Universal on November 16. Nebraska Beef alleged that Universal then began to make arrangements to perform ABC Electric's obligations under the subcontract, but failed to properly and timely remedy the deficiencies.

According to the petition, on March 11, 1997, J.B. Contracting filed an action in Douglas County District Court alleging that Nebraska Beef had failed to pay it for services rendered pursuant to the agreement. Nebraska Beef responded that J.B. Contracting was responsible to it for damages it sustained due to ABC Electric's failure to perform under the subcontract. On November 14, J.B. Contracting and Nebraska Beef entered into an agreement settling their dispute. The settlement included an agreement by Nebraska Beef to pay $45,000 to J.B. Contracting in exchange for an assignment by J.B. Contracting of its right to pursue any claim that J.B. Contracting had against ABC Electric or Universal.

In the portion of its petition designated as "First Cause of Action," Nebraska Beef alleged that Universal breached a covenant of good faith and fair dealing to J.B. Contracting which was implied in the performance bond. Specifically, Nebraska Beef alleged that Universal breached the covenant by (1) failing to inform J.B. Contracting that ABC Electric had defaulted on other construction projects; (2) failing to acknowledge communications regarding claims from both J.B. Contracting and Nebraska Beef; (3) failing to adequately investigate ABC Electric's default and the scope of work completed under the subcontract; (4) failing to adopt and implement reasonable standards to investigate the claim of J.B. Contracting and Nebraska Beef on the performance bond; (5) failing to pay

claims without conducting reasonable investigation; (6) failing to comply with standards in the industry for investigating the claim; (7) failing to, in good faith, effectuate prompt, fair, and equitable settlements of claims for which liability had become reasonably clear; (8) allowing ABC Electric to represent Universal in investigating, negotiating, and litigating the claim; (9) compelling ABC Electric to proceed with litigation; (10) failing to reasonably and adequately explain its failure to remedy ABC Electric's defaults under the performance bond; and (11) filing a lawsuit against Nebraska Beef on a subrogation claim of a construction lien which arose due to the nonpayment by ABC Electric of one of its subcontractors for labor and materials. Nebraska Beef alleged that as a direct and proximate result of Universal's breach, it sustained damages in that it was required to pay another contractor to complete ABC Electric's deficient work and that such completion delayed the operation of the facility, thus causing it to lose profits.

In that portion of its petition designated "Second Cause of Action," Nebraska Beef alleged that Universal violated the Unfair Insurance Claims Settlement Practices Act (UICSPA), codified at Neb. Rev. Stat. §§ 44-1536 to 44-1544 (Reissue 1993 & Cum. Supp. 1994), by (1) failing to acknowledge the claims of Nebraska Beef and J.B. Contracting with reasonable promptness, (2) refusing to pay J.B. Contracting's claim without first making reasonable investigation, (3) failing to adopt and implement reasonable standards to investigate the claim, and (4) making payment on the claim of J.B. Contracting without identifying the coverage under which each payment was being made. Nebraska Beef alleged that as a direct and proximate result of these violations, it and J.B. Contracting suffered the aforementioned damages.

## PROCEDURAL BACKGROUND

Universal filed a demurrer in which it asserted that the petition failed to state a cause of action. Specifically, Universal asserted that the petition was deficient because (1) it failed to allege any recoverable damage sustained by J.B. Contracting; (2) "Nebraska does not recognize claims by third-parties for bad faith against an insurer or surety"; and (3) the UICSPA does not afford a private right of action and that even if it did, "Universal

is not an 'insurer' as defined in § 44-1538(1)(c) of such act." A hearing on the demurrer was scheduled for October 22, 1999. However, because no bill of exceptions was filed in this appeal, we have no verbatim record of that proceeding.

On December 8, 1999, the district court entered its order sustaining the demurrer and dismissing the petition with prejudice. Relying upon *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994), and *State Security Savings Co. v. Pelster*, 207 Neb. 158, 296 N.W.2d 702 (1980), the court took judicial notice of an order that it had entered on June 29, 1999, in "the related case of J.B. Contracting Services, Inc. v. Universal Surety Company, Doc. 966, No. 988." The district court characterized that case as "certainly interwoven and interdependent" with the instant case in that both cases

> arise out of the same subject matter (i.e. the performance bond), and both involve the same parties, save Nebraska Beef. Since Nebraska Beef's claims, however, are based solely on J.B. Contracting's right to take legal action against Universal, and the former proceeding decided the issue of whether J.B. Contracting could in fact state a claim against Universal, the cases are very closely interwoven and interdependent.

The district court further stated:

> The Order in Doc. 966 No. 988 granted summary judgment for Universal on the grounds that J.B. Contracting failed to prove the existence of any damages, therefore J.B. Contracting could not bring a breach of contract action against Universal and the Amended Petition was then dismissed with prejudice.
>
> A careful examination of the Petition then reveals that all of Nebraska Beef's claims are based on the claims of J.B. Contracting regarding the performance bond and/or subcontract. Nebraska Beef was not a party to either contract and does not request relief on the basis of any third-party rights. Rather, Nebraska Beef's alleged sole right to a claim lies in the assignment of rights from J.B. Contracting to Nebraska Beef in the agreement between those two parties dated November 14, 1997. See Exhibit F, Plaintiff's Petition.

However, in the previous case the Court found that J.B. Contracting did not suffer any damages and therefore could not sue Universal for a breach of contract. Since all of Nebraska Beef's claims are based on the assignment from J.B. Contracting, and J.B. Contracting has nothing to assign, then Nebraska Beef has nothing to claim.

The district court provided an alternative ground for sustaining the demurrer with respect to the UICSPA claim by determining that contracts of suretyship are not covered under the UICSPA. The district court reasoned that the purpose of the UICSPA was to "'set forth standards for the disposition of claims arising under *policies* issued to residents of this state,'" see § 44-1537, and that § 44-1538(e), defining "policy," states specifically that "'policy or certificate shall *not* include contracts of . . . suretyship.'" Consequently, the district court held that the UICSPA was inapplicable.

Finally, noting that "[t]he defect in the pleadings goes to the right to sue Universal," the district court denied leave to amend, reasoning:

This Court in the earlier case at Doc. 966 No. 988 held that J.B. Contracting could not sue Universal because it suffered no damages. Even if J.B. Contracting were to suffer damages at some future time, the prior holding dismissed the [sic] J.B. Contracting's case with prejudice, so it cannot bring the same claim again. Since the only way Nebraska Beef has asserted a claim has been through J.B. Contracting, Nebraska Beef is not able to sue Universal on the same claims either.

## ASSIGNMENT OF ERROR

Nebraska Beef asserts that "[t]he district court erred in sustaining the demurrer of Universal Surety and in dismissing, with prejudice, Nebraska Beef's Petition without granting Nebraska Beef leave to amend its petition."

## STANDARD OF REVIEW

In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact

which may be drawn therefrom, but not the conclusions of the pleader. *Noffsinger v. Nebraska State Bar Assn., ante* p. 184, 622 N.W.2d 620 (2001); *Danler v. Rosen Auto Leasing*, 259 Neb. 130, 609 N.W.2d 27 (2000). In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action must be overruled. *Freeman v. Hoffman-La Roche, Inc.*, 260 Neb. 552, 618 N.W.2d 827 (2000); *Brown v. Social Settlement Assn.*, 259 Neb. 390, 610 N.W.2d 9 (2000).

## ANALYSIS

■ Assuming without deciding that Nebraska Beef's broadly worded assignment of error is sufficient to encompass the district court's disposition of its alleged claim pursuant to the UICSPA, the reasoning by which the district court determined that contracts of suretyship do not fall within the scope of the UICSPA is not discussed in either the opening brief or the reply brief filed on behalf of Nebraska Beef. Not only must a claimed prejudicial error be assigned, it must also be discussed in the brief of the asserting party; an appellate court will not consider assignments of error which are not discussed in the brief. *Carroll v. Chase County*, 259 Neb. 780, 612 N.W.2d 231 (2000); *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). Accordingly, we do not consider this issue.

■ Nebraska Beef argues that because the district court did not address the unresolved issue of whether Nebraska law would recognize the right of one who is not a party to a surety bond to maintain an action for bad faith against the surety, any appellate opinion on this issue "would be premature and advisory at this time." Reply brief for appellant at 14. We agree. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *In re Estate of Jakopovic, ante* p. 248, 622 N.W.2d 651 (2001); *Prucha v. Kahlandt*, 260 Neb. 366, 618 N.W.2d 399 (2000); *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000). Therefore, we do not address this issue.

■ The only other argument advanced by Nebraska Beef in support of its claim that the district court erred in sustaining the demurrer is its contention that the district court should not have

taken judicial notice of its prior order in another case. As correctly noted by the district court, we have held that when cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in the former proceedings involving one of the parties now before it, the court has a right to examine its own records and take judicial notice of its own proceedings and judgments in the former action. Matters so judicially noticed are properly considered when determining the question presented by a demurrer. *In re Adoption of Trystyn D.*, 259 Neb. 539, 611 N.W.2d 112 (2000); *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994); *Association of Commonwealth Claimants v. Moylan*, 246 Neb. 88, 517 N.W.2d 94 (1994). While it does not challenge this principle, Nebraska Beef argues that the district court erred in taking judicial notice of its order in the prior action because the two proceedings are not interwoven and interdependent.

Judicial notice of adjudicative facts is governed by Neb. Evid. R. 201, Neb. Rev. Stat. § 27-201 (Reissue 1995). This rule authorizes a judge or court to "take judicial notice, whether requested or not," and provides that "[j]udicial notice may be taken at any stage of the proceeding." § 27-201(3) and (6). In addition, the rule provides that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." § 27-201(5). The record does not reflect that Nebraska Beef utilized this rule to challenge the propriety of taking judicial notice in the district court prior to perfecting this appeal. Assuming without deciding that the issue is nevertheless preserved for appeal, the record does not permit us to address it.

 It is incumbent on the party appealing to present a record which supports the errors assigned, and absent such a record, the decision of the lower court will be affirmed. *In re Application of SID No. 384*, 259 Neb. 351, 609 N.W.2d 679 (2000); *Durkan v. Vaughan*, 259 Neb. 288, 609 N.W.2d 358 (2000); *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999). Meaningful appellate review requires a record that elucidates the factors contributing to the lower court judge's decision. *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997). In

*In re Adoption of Trystyn D., supra,* an appeal from the dismissal of a motion to set aside an adoption upon the sustaining of a demurrer, we noted that the county court could take judicial notice of the facts determined in the adoption proceeding which were included in the appellate record. Similarly, in *Association of Commonwealth Claimants v. Moylan, supra,* we noted that in ruling upon a demurrer, the district court took judicial notice of its prior related proceeding and that since the record from that proceeding had been included in the appellate record, it could properly be considered by this court.

Here, the record discloses nothing of the proceeding of which the district court took judicial notice, other than the court's brief description of that proceeding in its order as set forth above, and its characterization of the two proceedings as being "certainly interwoven and interdependent." Neither the order granting summary judgment nor any of the pleadings in the judicially noticed proceeding appear in the appellate record before us in this case. This could have been accomplished by inclusion of the pertinent documents from the other proceeding in the transcript filed herein. See, *State v. Dandridge,* 255 Neb. 364, 585 N.W.2d 433 (1998); Neb. Ct. R. of Prac. 4 (rev. 2000). In the absence of a record containing the order and pleadings from the judicially noticed proceeding, we are unable to address Nebraska Beef's contention that the prior proceeding and the present one are not interrelated and independent and that judicial notice was therefore improper.

 Finally, we address the argument that the district court erred in not granting Nebraska Beef leave to amend its petition after sustaining Universal's demurrer. When a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendment will correct the defect. *Noffsinger v. Nebraska State Bar Assn., ante* p. 184, 622 N.W.2d 620 (2001); *Gordon v. Community First State Bank,* 255 Neb. 637, 587 N.W.2d 343 (1998). Before error can be predicated upon the refusal of a trial court to permit an amendment to a petition after a demurrer is sustained, the record must show that under the circumstances, the ruling of the court was an abuse of discretion. *Drake v. Drake,* 260 Neb. 530, 618 N.W.2d 650 (2000). An abuse of dis-

cretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Weiss v. Weiss*, 260 Neb. 1015, 620 N.W.2d 744 (2001).

In the present case, the district court denied leave to amend based upon its reasoning that the defect in the petition went to the right of Nebraska Beef, as the assignee of J.B. Contracting, to maintain an action against Universal arising from the facts alleged in the petition. Because we do not disturb the district court's determination as a matter of law that J.B. Contracting had no valid claim to assign, we must also conclude that this defect cannot be cured by amendment.

In arguing that it should have been granted leave to amend, Nebraska Beef relies upon *Nebraska Beef v. Universal Surety Co.*, 9 Neb. App. 40, 607 N.W.2d 227 (2000) (*Nebraska Beef I*). In that case, Nebraska Beef asserted claims against Universal based upon the same alleged underlying facts and performance bond involved in the present case, seeking damages on theories of breach of contract and negligence. Universal's demurrer was sustained without leave to amend, and the action was dismissed by the district court. In resolving the appeal from this order taken by Nebraska Beef, the Nebraska Court of Appeals held that the district court did not err in determining that the petition failed to state facts sufficient to constitute a cause of action based upon theories of breach of contract and negligence. However, the Court of Appeals also held that Nebraska Beef should have been given leave to amend its petition to allege a subrogation theory of recovery, i.e., that it had paid subcontractors to complete the obligations of ABC Electric who should have been paid by Universal pursuant to its performance bond, and that it was entitled to recover these payments from Universal. Nebraska Beef argues that "[c]onsidering that the subrogation issues of *Nebraska Beef I* may have direct application in this present case, the requested amendment in this action may correct the district court's perceived defect in the original pleading." Brief for appellant at 13. While Nebraska Beef does not identify the nature of the "requested amendment," we understand its argument to be that it should have been granted leave to amend its petition in this action to allege a subrogation claim.

*Nebraska Beef I* and the present case involve the same parties and the same underlying factual circumstances, i.e., the alleged default by ABC Electric, the named principal in the performance bond. Other than the theories of recovery asserted, the primary difference we discern between the two cases is that in *Nebraska Beef I*, Nebraska Beef asserted claims on its own behalf whereas in this case, it asserted claims as the alleged assignee of J.B. Contracting. There is nothing in the record or the briefs to suggest that Nebraska Beef could assert a subrogation claim as the assignee of J.B. Contracting. Therefore, granting leave to amend in this action to assert the same subrogation claim that it was given leave to assert in *Nebraska Beef I* would only encourage piecemeal litigation and serve no useful purpose. Accordingly, we conclude that the district court did not abuse its discretion in not granting leave to amend.

## CONCLUSION

Based upon the record presented for our review and for the reasons stated herein, we find no error by the district court and, therefore, affirm its judgment of dismissal.

AFFIRMED.

McCORMACK, J., not participating.