GARY RICHMOND, APPELLANT, V.
KELLY CASE, APPELLEE.

647 N.W.2d 90

Filed July 12, 2002.   No. S-01-475.

Monte L. Neilan, of Douglas, Kelly, Meade, Ostdiek, Bartels & Neilan, P.C., for appellant.

Don Stenberg, Attorney General, and Royce N. Harper for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is a civil action in which Gary Richmond sought declaratory and injunctive relief as well as money damages from Kelly Case, an employee of the Nebraska Department of Health and Human Services (DHHS). Richmond alleged that Case engaged in "the unauthorized practice of law" and deprived him of his constitutional rights under color of state law in obtaining the relinquishment of his parental rights to his minor daughter, A.C. Richmond appeals from an order of the district court for Kimball County entering summary judgment in favor of Case. We moved the appeal to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## RECORD

### PLEADINGS

Richmond's operative first amended petition includes three separately designated "causes of action." In his first "cause of

action," Richmond alleged that on July 23, 1993, the county court for Kimball County, sitting as a juvenile court, placed A.C. in the temporary custody of DHHS. He further alleged that on or about June 1, 1995, A.C. was placed in the Omaha home of her maternal grandparents. Richmond then alleged that in September 1996, a petition was filed in the county court for Kimball County seeking to terminate his parental rights and that counsel was appointed for him for the first time on July 29, 1997.

Richmond alleged that Case, whom he identifies as a "caseworker" employed by DHHS, was assigned to the juvenile case in early August 1998. He alleged that Case contacted him to request a meeting, to which he agreed. Richmond alleged that during this meeting, he participated in a telephone conference call with Case, A.C., and A.C.'s maternal grandmother. He alleged that Case then advised and counseled him, made recommendations regarding his parental rights, and provided him with certain legal documents, despite the fact that Case was not a lawyer. Richmond further alleged that Case was aware that Richmond was then represented by appointed counsel but took such actions without the consent or knowledge of such counsel. Richmond alleged he had "an attorney-client relationship" with Case and that pursuant to her advice and counsel, he executed certain documents relinquishing his parental rights, which were subsequently filed in juvenile proceedings before the county court for Kimball County. Richmond alleged that he executed these documents in order to facilitate an "open adoption" by A.C.'s maternal grandparents, which adoption would allow him to visit A.C. after his parental rights had been terminated.

Richmond alleged that upon becoming aware of these events, his appointed counsel argued to the county court that Case had engaged in the unauthorized practice of law and moved to strike the relinquishment documents as violative of Neb. Rev. Stat. § 7-101 (Reissue 1997). Richmond alleged that this motion was overruled and that his appeal therefrom was dismissed "for lack of jurisdiction." He further alleged that the Kimball County attorney declined a request to prosecute Case under § 7-101. Richmond alleged that because he had executed the relinquishment forms, he lacked standing to participate in proceedings to terminate A.C.'s mother's parental rights and that the

relinquishment forms "may be presented, asserted, and relied upon, at any time, to the Plaintiff's great detriment, by those having interests and duties adverse to the Plaintiff." He prayed for relief consisting of a declaration that Case's conduct constituted the unauthorized practice of law and further prayed that the relinquishment forms he executed be declared null and void as the "fruit of the unauthorized practice of law." Richmond also sought injunctive relief to prevent Case from engaging in similar conduct directed toward him or other unspecified individuals.

In his second "cause of action," Richmond incorporated the foregoing allegations and further alleged that Case was negligent in advising him concerning his parental rights, resulting in injury and general damages. And finally, in his third "cause of action" Richmond alleged that Case's conduct violated his constitutional rights under color of state law, thus entitling him to compensatory and punitive damages, as well as other relief, pursuant to 42 U.S.C. § 1983 (2000).

Case filed an answer that included a general denial of the allegations of improper or unlawful conduct and two affirmative defenses: (1) that she "acted reasonably and within the scope of her employment with due regard [for] the best interests of [A.C.]" and (2) that she was entitled to "qualified immunity." On the same day Case filed her answer, Richmond interposed a pleading captioned "Plaintiff's Demurrer to Defendant's Affirmative Defenses," asserting "[f]ailure, as a matter of law, to state a defense."

### RICHMOND'S MOTION FOR SUMMARY JUDGMENT

Richmond also filed a motion for partial summary judgment as to the issue of liability on his first "cause of action." The motion came on for hearing on March 7, 2000, along with four other pending motions, including Richmond's motion for attorney fees. Richmond's counsel appeared personally at the hearing, while Case's attorneys participated telephonically. It appears that this was the first evidentiary hearing conducted in the case, and it is at this point that significant deficiencies in the record began to develop.

Neb. Ct. R. of Prac. 5B(6)c (rev. 2000) specifies the manner in which evidentiary exhibits are to be identified, numbered, and retained in the bill of exceptions, providing in pertinent part:

Exhibits are to be marked in numerical order, irrespective of the party producing them, and shall show the date on which they were marked. The sequential numbering of exhibits shall begin with the first hearing held in the case and continue until final disposition. The same number shall not be given to more than one exhibit in any case. If the pages of a multipage exhibit are not otherwise numbered, the reporter shall number the pages in sequence and shall in all instances mark such an exhibit so as to indicate the number of pages it contains.

The first exhibits offered by Richmond's counsel related to his motion for attorney fees and were numbered 34, 10, 10A, 10B, 30, and 32. These included Case's deposition, marked as exhibit 30; an affidavit of Richmond, marked as exhibit 32; an affidavit of Case dated February 7, 2000, marked as exhibit 10; and copies of what purport to be excerpts from a "Nebraska Health and Human Services Manual," marked as exhibits 10A and B. It appears that exhibits 10 and 10A and B were originally a single exhibit, but they were marked and identified separately for a reason that is not apparent from the record. The court received each of these exhibits and then took the motion for fees under advisement. At that time, the parties agreed to argue a portion of Richmond's demurrer in conjunction with his motion for partial summary judgment and then submit arguments on the remaining portion of the demurrer by brief.

Richmond then offered exhibits 33, 32, 36, 37, 30, 31, and 35 in support of his motion for partial summary judgment. Two of these exhibits, numbers 30 and 32, had previously been offered on the motion for attorney fees. The remaining exhibits included an affidavit of a friend of Richmond's, marked as exhibit 33; an affidavit of the Counsel for Discipline of the Nebraska State Bar Association, marked as exhibit 36; the deposition of the county court judge who presided over A.C.'s juvenile court proceedings, marked as exhibit 31; and two affidavits by Richmond's attorney, marked as exhibits 35 and 37. The court received exhibits 30 through 33 and 36, and took the objections to exhibits 35 and 37 under advisement.

In opposition to Richmond's motion for partial summary judgment, Case's counsel offered exhibit 10, which the court

identified as "the regs and guidelines," but which appears in the record as the aforementioned affidavit of Case dated February 7, 2000. Case's counsel also offered exhibit 11, another affidavit executed by Case on February 7, 2000, and exhibit 38, an affidavit executed by Case on February 25, 2000, which included four attachments designated A through D. The court received each of these exhibits. By order filed August 1, 2000, the district court overruled, without opinion, Richmond's demurrer and his motion for partial summary judgment without opinion.

### CASE'S MOTION FOR SUMMARY JUDGMENT

On July 28, 2000, Case filed a pleading captioned "Motion for Summary Judgment Based on Qualified Immunity." A hearing on the motion was held on August 25. Richmond's counsel appeared personally, while Case's counsel again participated by telephone. Case's counsel identified 11 exhibits offered in support of the motion. However, the exhibits identified in the offer made on the record and those marked by the court reporter do not correspond. Counsel identified exhibit 1 as "an Affidavit of Kelly Case," but exhibit 1 is a document entitled "Relinquishment of Child by Parents." Counsel identified exhibit 2 as a document entitled "Relinquishment of the Child by Parent," but the document marked as exhibit 2 is entitled "Affidavit of Explanation on Nonconsent Form." Counsel identified exhibit 3 as "the Questionnaire for Relinquishment of Parental Rights," but exhibit 3 is entitled "Affidavit by Agency." Similarly, counsel identified exhibit 4 as an "Affidavit of Explanation [on] Nonconsent Form," but exhibit 4 in the bill of exceptions is entitled "Questionnaire for Relinquishment of Parental Rights." Counsel identified exhibit 5 as an "Affidavit by Agency," but, inexplicably, exhibit 5 in the bill of exceptions is a partially executed stipulation and order dealing with discovery issues in the case. Counsel identified exhibit 6 as "HHS Regulations 390 NAC 8-003 through 8-005," but the document in the bill of exceptions bearing that exhibit number is a copy of a letter from Richmond's counsel to Case's counsel. Similarly, exhibit 7 was identified as "HHS Section V on Voluntary Relinquishment," but exhibit 7 in the bill of exceptions is another letter between counsel. Exhibit 8 is identified as "Narrative of Kelly Case, the defendant perform-

ing her work," but appears in the bill of exceptions as "Plaintiffs [sic] First Set of Discovery Requests to Defendant." Case's counsel identified exhibit 9 as portions of the deposition of Case and exhibit 10 as portions of the deposition of the county judge, but exhibit 9 is a partially executed copy of a document entitled "Defendant's Answers to Interrogatories," and the only exhibit 10 appearing in the record is the affidavit of Case offered and received during the previous hearing. Finally, counsel identified exhibit 11 as "an Affidavit of Nancy Morris who is a Child Protective Service Worker." Exhibit 11 found in the bill of exceptions, however, is a deposition of Case marked and received at the March 7, 2000, hearing.

Rule 5B(6)c also provides in part:

> Ordinarily, exhibits or papers contained in the bill of exceptions should be placed in the record immediately following where they are ruled on by the court. If exhibits are frequently referred to in the testimony, they should be inserted in the record in such a manner as to be easily removed; for instance, by placing them in an attached envelope. If the exhibits are of such character or so numerous that to insert them in any volume containing testimony would make the volume cumbersome and difficult to handle while reading, then such exhibits should be contained in a separate volume. If exhibits are of such character that they cannot be inserted in a bound volume, then they should separately accompany the record.

With the possible exception of the two depositions, all of the exhibits were capable of being bound in the bill of exceptions "immediately following where they are ruled on by the court" in compliance with rule 5B(6)c. Instead, all of the exhibits were placed unbound in a manila envelope marked "Bill of Exceptions Envelope — Exhibits."

By order filed April 2, 2001, the district court granted Case's "Motion for Summary Judgment Based on Qualified Immunity" and dismissed the action. The order recites that the judge "reviewed the evidence submitted to the Court," but does not make specific reference to any item of evidence. The court concluded that Case acted "in accordance with the applicable statutes of the State of Nebraska and the regulations promulgated by her

employer" and that she "did not enter into the unauthorized practice of law."

## ASSIGNMENT OF ERROR

Richmond assigns, restated, that the district court erred in granting Case's motion for summary judgment.

## STANDARD OF REVIEW

■■■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002); *Altaffer v. Majestic Roofing*, 263 Neb. 518, 641 N.W.2d 34 (2002); *Shlien v. Board of Regents*, 263 Neb. 465, 640 N.W.2d 643 (2002). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Smeal v. Olson*, 263 Neb. 900, 644 N.W.2d 550 (2002); *Polinski v. Sky Harbor Air Serv.*, 263 Neb. 406, 640 N.W.2d 391 (2002).

## ANALYSIS

■■■ In order to provide Richmond meaningful appellate review of his assignment of error, we must be presented with a record that elucidates the factors contributing to the district court's decision to grant summary judgment in favor of Case. See, *J.B. Contracting Servs. v. Universal Surety Co.*, 261 Neb. 586, 624 N.W.2d 13 (2001); *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997). Unfortunately, we are not presented with such a record here. Because of the discrepancies between the identification of exhibits offered in support of Case's motion for summary judgment and the exhibits which were actually marked by the court reporter, we cannot determine with any reasonable degree of assurance what evidence was actually before the district court when it decided the motion. For example, the depositions of Case and the county judge were offered as exhibits 9 and 10 at the August 25, 2000,

hearing on Case's motion for summary judgment. Exhibits 9 and 10 in the bill of exceptions, however, are other documents, not the depositions. The aforementioned depositions were marked as exhibits 30 and 31 at the prior hearing on March 7, but they are not shown in the bill of exceptions as being received on August 25. Also, the bill of exceptions reflects that exhibit 11, described as an affidavit of a Child Protective Services worker, was offered and received at the hearing on August 25. Again, however, exhibit 11 in the bill of exceptions is an affidavit of Case offered at the March 7 hearing, and although there is a copy of an affidavit of the Child Protective Services worker in the transcript, we find no such affidavit anywhere in the bill of exceptions. The district court's order granting the motion for summary judgment provides us no guidance because it makes no reference, either by exhibit number or substantive description, to specific evidentiary items considered and relied upon in reaching its judgment.

The assigned error in the granting of Case's motion for summary judgment requires that we review the evidence offered in support of and in opposition to the motion. The party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists. That party must therefore produce enough evidence to demonstrate his or her entitlement to a judgment if the evidence remains uncontroverted, after which the burden of producing contrary evidence shifts to the party opposing the motion. *Smeal v. Olson, supra*; *Polinski v. Sky Harbor Air Serv., supra*. Affidavits, depositions, and other evidence considered at a hearing on a motion for summary judgment must be preserved in a bill of exceptions filed in the trial court before such evidence can be considered during appellate review of the motion. *Morrison Enters. v. Aetna Cas. & Surety Co.*, 260 Neb. 634, 619 N.W.2d 432 (2000); *Durkan v. Vaughan*, 259 Neb. 288, 609 N.W.2d 358 (2000). The procedure for preparation of the bill of exceptions is regulated by the rules of practice prescribed by this court. *Shuck v. Jacob*, 250 Neb. 126, 548 N.W.2d 332 (1996).

Because we cannot determine from this record what evidence Case presented in support of her motion for summary judgment, we cannot conclude that she met her burden of producing evidence that, if uncontroverted, would entitle her to judgment as

a matter of law. See *Morrison Enters. v. Aetna Cas. & Surety Co., supra.* We note that we are presented here with one issue of law which does not require evidentiary support, i.e., whether one may maintain a private cause of action for money damages against another based upon an alleged "unauthorized practice of law." This is an issue of first impression in this state which was neither briefed by the parties nor decided by the district court. Although it is an issue of law, we do not address it at this time based upon the principle that an appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Sydow v. City of Grand Island,* 263 Neb. 389, 639 N.W.2d 913 (2002); *Dossett v. First State Bank,* 261 Neb. 959, 627 N.W.2d 131 (2001); *Adams v. State,* 261 Neb. 680, 625 N.W.2d 190 (2001).

## CONCLUSION

This court's rules governing the numbering of exhibits and the manner of their inclusion in the bill of exceptions are designed to provide an appellate court with a clear understanding of what documentary evidence was received and considered by a trial court with respect to a particular matter submitted for decision, thus facilitating meaningful appellate review. Because those rules were not followed, we are unable to conclude, under our standard of review, that Case made the requisite factual showing which would entitle her to summary judgment. Accordingly, the judgment of the district court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.