WILLIAM F. EBERT, APPELLANT, V. NEBRASKA DEPARTMENT
OF CORRECTIONAL SERVICES ET AL., APPELLEES.
656 N.W.2d 634

Filed February 11, 2003.   No. A-01-906.

William F. Ebert, pro se.

Don Stenberg, Attorney General, and Linda L. Willard for
appellees.

SIEVERS, INBODY, and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

William F. Ebert was sentenced in July 1997 to serve 10 years on each of three convictions of second degree forgery and being a habitual criminal. Ebert brought a declaratory judgment action in the district court for Lancaster County against the Department of Correctional Services (DCS); Harold W. Clarke, the director of DCS; and Ronald Riethmuller, the records manager of DCS (collectively the defendants), alleging that his sentences were improperly calculated in that he had not been given good time credit. The trial court found that the defendants were entitled to summary judgment, based on statutory language mandating a minimum 10-year sentence on a habitual criminal conviction. The trial court further found that DCS was entitled to sovereign immunity and that the parties sued in their official capacities were entitled to immunity from Ebert's request to compel them to credit him with good time. For the following reasons, we affirm.

## BACKGROUND

Ebert was originally sentenced on March 26, 1996, to a term of 4 to 6 years' imprisonment. The nature of Ebert's original offense is not clear from the record in the present case. On July 1, 1997, Ebert received sentences of 10 years' imprisonment on each of three separate convictions of second degree forgery and being a habitual criminal. The offenses for which Ebert received these sentences occurred in January and February 1996. These sentences were to run concurrently with one another but consecutively to Ebert's previous sentence. Ebert has not received any good time credit toward the service of his 1997 sentences.

Ebert filed a petition on December 28, 2000, initiating an action under the Uniform Declaratory Judgment Act, see Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1995 & Cum. Supp. 2002), to determine his rights and legal interests in relation to the calculation of his 1997 sentences. Ebert alleged that upon his receipt of his 1997 sentences, prison officials recomputed his prison term; that he received a "timesheet" indicating that he was serving a term of 14 to 16 years' imprisonment; and that this timesheet also notified him that no meritorious good time credit was allowed on

the term and that no increase in "good behavior" good time credit was to be granted other than that already allowed under his original sentence. Ebert further alleged that Neb. Rev. Stat. § 83-1,110 (Reissue 1994) specifically controls the calculation of his 1997 sentences and that judicial interpretation and the legislative intent of that provision clearly establish his entitlement to good time credit on his 1997 sentences. Ebert sought an order restraining the defendants from denying him good time credit on his 1997 sentences. He attached several "exhibits" to his petition, including several "Inmate Time/Sentence" sheets, an inmate interview request form, and copies of several attorney general opinions and related correspondence concerning the application of good time laws to mandatory minimum sentences and similar issues.

In their answer, the defendants admitted that Ebert had not received good time credit toward the service of his 1997 sentences but alleged that this withholding of credit was being done in accordance with Neb. Rev. Stat. § 29-2221 (Reissue 1995), as amended by 1995 Neb. Laws, L.B. 371. The defendants also alleged that they were entitled to sovereign immunity in this matter. The defendants filed a motion for summary judgment, asserting that they were entitled to qualified immunity from suit and that they were entitled to judgment as a matter of law. Ebert filed a motion in objection to the defendants' answer and motion for summary judgment.

In its order of July 16, 2001, the district court found that there were no genuine issues of material fact, granted the defendants' motion for summary judgment, and dismissed Ebert's petition. The court found that the Nebraska Legislature made it clear that good time was not to apply to a habitual criminal sentenced to a mandatory 10-year sentence. Based upon the clear language of the habitual criminal statute, as well as legislative history, the court found that Ebert was not entitled to good time on his 1997 sentences.

The court further found that the Nebraska Supreme Court had construed a statute authorizing an action against the defendants strictly, because the statute is in derogation of the State's sovereign immunity. The court found that DCS is an agency of the State and is entitled to the sovereign immunity of the State. The court found that the individual defendants had been sued in

their official capacities and concluded that these individuals were entitled to sovereign immunity from Ebert's request to compel them to credit him with good time against a statutory sentence. Ebert subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Ebert asserts, restated, that the district court erred in (1) granting the defendants' motion for summary judgment, (2) finding that the defendants were entitled to sovereign immunity, (3) admitting into evidence the introducer's statement for L.B. 371, and (4) not including certain items in the bill of exceptions. As Ebert's second, third, and fourth assignments of error do not bear on our resolution of this appeal, we do not consider them. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002).

## STANDARD OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Johnson v. Kenney*, 265 Neb. 47, 654 N.W.2d 191 (2002).

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Richmond v. Case*, 264 Neb. 319, 647 N.W.2d 90 (2002). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

The good time laws in effect at the time of Ebert's original sentence were the provisions of 1992 Neb. Laws, L.B. 816, § 5, found in § 83-1,110 (Reissue 1994), which provided:

(1) Every committed offender shall be eligible for release on parole upon completion of the minimum term

less good time. A committed offender shall be eligible for parole prior to the expiration of the minimum term whenever the sentencing judge or the judge's successor in office gives approval for the parole of such offender.

(2) Every committed offender sentenced to consecutive terms, whether received at the same time or at any time during the original sentence, shall be eligible for release on parole when the offender has served the total of the minimum terms, less good time. The maximum terms shall be added to compute the new maximum term which, less good time, shall determine the date when discharge from the custody of the state becomes mandatory.

L.B. 371 was passed during the 1995 legislative session and approved by the governor on June 13, 1995. The version of § 83-1,110 quoted above was amended by § 21 of L.B. 371, which became effective on July 1, 1996. The amended version, codified at § 83-1,110 (Reissue 1999), reads in relevant part:

(1) Except as provided in subsections (3) and (4) of this section, every committed offender shall be eligible for parole when the offender has served one-half the minimum term of his or her sentence. *No such reduction of sentence shall be applied to any sentence imposing a mandatory minimum term.*

(2) Except as provided in subsections (3) and (4) of this section, every committed offender sentenced to consecutive terms, whether received at the same time or at any time during the original sentence, shall be eligible for release on parole when the offender has served the total of one-half the minimum terms. The maximum terms shall be added to compute the new maximum term which, less good time, shall determine the date when discharge from the custody of the state becomes mandatory.

(Emphasis supplied.)

Also relevant to our resolution of this appeal is § 13 of L.B. 371, as codified in § 29-2221, which addresses habitual criminals and states in subsection (1), in relevant part:

Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any

other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal and *shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years* and a maximum term of not more than sixty years[.]

(Emphasis supplied.) Section 13 of L.B. 371 became operative on its effective date, which was September 9, 1995.

Ebert argues that the good time law in effect at the time of his original sentence in March 1996, in other words, § 83-1,110 (Reissue 1994), should be applied to allow the calculation of good time credit upon his sentences received in July 1997. Ebert essentially argues that § 83-1,110 (Reissue 1999) as amended by L.B. 371 and effective as of July 1, 1996, does not apply to his habitual criminal sentences received in July 1997.

A statute is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous. *Johnson v. Kenney*, 265 Neb. 47, 654 N.W.2d 191 (2002). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Hauser v. Nebraska Police Stds. Adv. Council*, 264 Neb. 605, 650 N.W.2d 760 (2002). Where the language of a statute is plain and unambiguous, no interpretation is needed and a court is without authority to change such language. *State v. Rubio*, 261 Neb. 475, 623 N.W.2d 659 (2001). It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute. *Id.* In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Johnson v. Kenney, supra.* In construing a statute, a court must look to the statute's purpose and give the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Id.* The components of a series or collection of statutes pertaining to a

certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible. *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002).

Section 29-2221, which became effective prior to Ebert's commission of and sentencing for the crimes in question, states that habitual criminals "*shall be punished by imprisonment . . . for a mandatory minimum term of ten years* and a maximum term of not more than sixty years." (Emphasis supplied.) Section 83-1,110(1) (Reissue 1999) provides that a defendant sentenced to a mandatory minimum term of imprisonment is not eligible to receive good time and clearly indicates that a defendant sentenced as a habitual criminal is subject to a mandatory minimum term of 10 years' imprisonment and is not eligible for good time during that mandatory minimum term. Additionally, the legislative history of § 83-1,110 found in L.B. 371, § 21, establishes that the Legislature intended for inmates to serve the entire mandatory minimum sentence with no reductions. The summary of L.B. 371, § 21, referenced to the Judiciary Committee indicates that the minimum penalty should be the number of years an offender is imprisoned with no "reductions for 'good time.'"

The phrase "mandatory minimum term of ten years" as used in § 29-2221 means that a sentence served by a habitual criminal is not to be less than 10 years' imprisonment. To hold as acceptable a reduction in a habitual criminal's mandatory sentence for good time would not only fail to give effect to the plain, direct, and unambiguous language of the statute, but would actually read the word "mandatory" entirely out of the statute. The Nebraska Supreme Court recently reached a similar conclusion in *Johnson v. Kenney*, 265 Neb. 47, 654 N.W.2d 191 (2002). In that case, the court considered whether the good time credit set forth in Neb. Rev. Stat. § 83-1,107(1) (Reissue 1994) applied to the mandatory minimum sentence imposed upon the defendant pursuant to § 29-2221(1). The court found that § 29-2221(1) as amended by L.B. 371 was applicable to the defendant's case. The version of § 83-1,107(1) considered by the court provided:

> The chief executive officer of a facility shall reduce the term of a committed offender by six months for each year

of the offender's term and pro rata for any part thereof which is less than a year. The total of all such reductions shall be credited from the date of sentence, which shall include any term of confinement prior to sentence and commitment as provided pursuant to section 83-1,106, and shall be deducted:

    (a) From the minimum term, to determine the date of eligibility for release on parole; and

    (b) From the maximum term, to determine the date when discharge from the custody of the state becomes mandatory.

The *Johnson* court disagreed with the trial court's finding that § 83-1,107 was not ambiguous. The *Johnson* court found it undisputed that a habitual criminal sentenced under § 29-2221 may not be released until he or she has served the mandatory minimum sentence of 10 years; however, the court found ambiguity in the fact that § 83-1,107 did not address whether good time may be applied to the maximum term of the sentence when the mandatory minimum and the maximum term are the same number of years. The court stated that "[w]hen the relevant statutes are considered in pari materia, the intent of habitual criminal sentencing is thwarted if good time credit is applied to the maximum term of the sentence before the mandatory minimum sentence has been served. The minimum portion of the sentence would have no meaning." 265 Neb. at 51, 654 N.W.2d at 194.

The *Johnson* court considered the legislative history of L.B. 371 in order to determine the Legislature's intent. The court noted that the " 'Summary of L.B. 371 Referenced to the Judiciary Committee,' which accompanied the Introducer's Statement of Intent, provided: 'Habitual Criminal Sentencing . . . No person sentenced to a mandatory term under these statutes would be eligible for probation or reductions for "good time." ' " 265 Neb. at 52, 654 N.W.2d at 195, quoting Judiciary Committee Hearing, 94th Leg., 1st Sess. (Feb. 8, 1995). The court also found that the floor debate concerning L.B. 371 likewise supported this position. From its review of the legislative history, the court concluded that the Legislature did not intend that good time credit under § 83-1,107(1) would apply to reduce mandatory minimum sentences imposed on habitual criminals under § 29-2221.

With regard to the present case, we note that § 29-2221 as amended by L.B. 371 was in place before Ebert committed and was sentenced for the crimes in question and is thus applicable to his 1997 sentencing. Further, § 83-1,110 (Reissue 1999), as amended by L.B. 371, also clearly indicates that no reduction in sentence shall be applied to any sentence imposing a mandatory minimum term. This statute was likewise effective before Ebert's 1997 sentencing. Accordingly, we conclude that the district court did not err in finding that Ebert was not entitled to good time credit on his mandatory minimum sentences. We make no comment regarding what good time Ebert may be eligible for after serving the mandatory minimum sentences, because that is not an issue in this appeal. We further conclude that viewing the evidence in the light most favorable to Ebert and giving him the benefit of all reasonable inferences deducible from the evidence, the district court did not err in granting the defendants' motion for summary judgment.

## CONCLUSION

The district court did not err in granting the defendants' motion for summary judgment.

AFFIRMED.