PREMIUM FARMS, A GENERAL PARTNERSHIP, APPELLEE AND CROSS-APPELLANT, V. THE COUNTY OF HOLT, NEBRASKA, APPELLANT AND CROSS-APPELLEE.
640 N.W.2d 633

Filed March 15, 2002.   No. S-00-744.

James G. Kube, of Stratton, Ptak & Kube, P.C., for appellant.

Rodney M. Confer, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Premium Farms, a general partnership, brought a declaratory judgment action, asking the Holt County District Court to

determine the validity of zoning regulations enacted by the Holt County Board of Supervisors. The court determined that various portions of the zoning regulations exceeded the county's zoning authority pursuant to Neb. Rev. Stat. § 23-114.03 (Reissue 1997). The county appeals.

## FACTUAL BACKGROUND

On June 30, 1998, the board of supervisors adopted resolution No. 98-11, zoning regulations for Holt County, pursuant to its previously enacted comprehensive plan. The zoning regulations provided that any confined livestock operation (CLO) housing over 1,000 "animal units" must obtain a conditional use permit from the county.

In the fall of 1998, Premium Farms wrote to the Holt County Attorney inquiring whether the zoning regulations would apply to a confined hog production facility which Premium Farms intended to build in Holt County. The county attorney informed Premium Farms that its project was not exempt from the county's zoning regulations. Premium Farms began construction of its facility in November 1998 without obtaining a conditional use permit from Holt County.

In July 1999, while construction on the facility was continuing, the county attorney sent Premium Farms another letter, advising it to obtain a conditional use permit pursuant to county zoning regulations. On July 15, Premium Farms filed an amended petition for declaratory judgment and a temporary injunction, seeking relief from the enforcement of the Holt County zoning regulations. In its petition, Premium Farms asserted that the zoning regulations were unconstitutional and in excess of the county's statutory authority. Premium Farms also alleged that it would be futile to apply for a conditional use permit because the zoning regulations were invalid.

After a hearing on July 15, 1999, the district court granted a temporary injunction and enjoined the county from enforcing its zoning regulations against Premium Farms. In March 2000, Premium Farms filed a motion for summary judgment, asserting that there were no disputed issues of material fact and that certain portions of the Holt County zoning regulations were invalid as a matter of law. The county also filed a motion for summary

judgment, asserting conversely that the regulations were valid as a matter of law. At the hearing on the motions for summary judgment, Premium Farms argued that the Holt County zoning regulations were "outside of the powers that are granted to the County." Relying on § 23-114.03, Premium Farms asserted that counties in Nebraska "do not have power to zone . . . buildings used for agricultural purposes."

Section 23-114.03 states in relevant part:

> Within the area of jurisdiction and powers established by section 23-114, the county board may . . . regulate, restrict, or prohibit the erection, construction, reconstruction, alteration, or use of nonfarm buildings or structures and the use, conditions of use, or occupancy of land. . . . Nonfarm buildings are all buildings except those buildings utilized for agricultural purposes on a farmstead of twenty acres or more which produces one thousand dollars or more of farm products each year.

The county argued that § 23-114.03 was ambiguous in that the plain language of § 23-114.03 simultaneously granted counties the authority to regulate all land use, while prohibiting counties from regulating the use of farm buildings. The county further asserted that the legislative history of § 23-114.03 reconciled this ambiguity by showing that the Legislature intended § 23-114.03 to exempt farm buildings only from county building permit requirements.

On June 26, 2000, the court issued its order, stating that although § 23-114.03 "may not be absolutely clear," it was not ambiguous, and that consideration of the legislative history of § 23-114.03 was unnecessary to determine its meaning. The court found, inter alia, that "the word 'nonfarm' [in § 23-114.03] modifies only the word 'buildings' and does not modify the word 'structures.' " Accordingly, the court determined that § 23-114.03 was intended to prohibit the county from regulating "farm buildings," but not "farm structures." The court went on to find that the county's zoning regulations attempted to regulate "farm buildings" based on the definition of a CLO contained in article 1 of the regulations.

The district court further determined that under its interpretation of § 23-114.03, the county could still regulate all "use,

conditions of use, or occupancy of land." The court reasoned that regulating land use and regulating building use were separable activities, as follows:

> The use of a farm building, i.e., the interior within the confines of the roof, walls, and flooring, does not constitute the use of land within the meaning of § 23-114.03. However, when the use or consequences of use of the building exit therefrom onto, across, or under the land, whether underneath the building or adjoining thereto, or onto or into some other structure, the use involved is no longer limited to a building and becomes the use of land or another structure. While § 23-114.03 withholds authority to regulate, restrict, or prohibit the use of a farm building, that limitation does not apply to consequences or usages flowing or arising *outside the building*.

(Emphasis supplied.) The court concluded that based on its plain meaning interpretation of § 23-114.03, a county's authority to regulate land use stops at the farm building walls.

As a result of this interpretation, the court found that any reference to "agricultural buildings" or "CLO's" contained in the Holt County zoning regulations "exceed[ed] the county's statutory authority." The district court specifically found that the definition of a CLO contained in article 1 of the zoning regulations "exceed[ed] the county's statutory authority because it clearly and specifically applie[d] to agricultural buildings." Article 1, § 2(7), states:

> CONFINED LIVESTOCK OPERATIONS: Shall mean totally roofed buildings, which may be open-sided (for ventilation purposes only) or completely enclosed on the sides, wherein animals or poultry are housed over solid concrete or dirt floors, or slatted (partially open) floors over pits or manure collection areas in pens, stalls or cages, with or without bedding materials and mechanical ventilation.

The court found that "[b]y defining 'Confined Livestock Operation[s]' in terms of agricultural buildings, the county created a foreseeable and needless conflict with § 23-114.03." The district court then concluded that the invalid regulations were severable from the remainder of the regulations. In conformity with this determination, the court deleted the phrase "buildings or"

from article 4, §§ 2.1(b) and 3.1, of the zoning regulations regarding setback requirements. The court further struck all of article 4, § 2.3(a), and article 3, § 3.2, which primarily discussed standards for CLO manure disposal. From article 8, the court struck §§ 3, 4, and 5, which addressed nonconforming uses of CLO's. The court additionally struck article 10, § 3.1(a) and (b), which stated the requirements for a CLO conditional use permit application, and granted the county authority to impose conditions upon the grant of such a permit. From article 13, § 2, the court struck a paragraph regarding enforcement of zoning penalties against a CLO. The court also struck a portion of article 12 which incorporated certain sections of the Nebraska Department of Environmental Quality's rules and regulations into the zoning regulations.

Accordingly, the court in part granted Premium Farms' motion for summary judgment regarding the portions of the zoning regulations the court found to be invalid. The court also in part granted the county's motion for summary judgment regarding the remainder of the zoning regulations which the court found were valid and enforceable. The court ordered the county to pay costs of $89, with interest, to Premium Farms. The county appealed and petitioned this court to bypass the Nebraska Court of Appeals. Premium Farms cross-appealed, asserting that the district court erred in failing to also strike article 4, § 3.3, and article 1, § 2.18, as violative of § 23-114.03. Pursuant to Neb. Rev. Stat. § 24-1106(2) (Reissue 1995), we granted the petition to bypass.

## ASSIGNMENTS OF ERROR

The county asserts, rephrased and summarized, that the district court erred in (1) failing to find § 23-114.03 ambiguous, (2) failing to properly consider and apply the legislative history of § 23-114.03 to determine the statute's meaning, (3) finding that the term "CLO" as defined in the county zoning regulations was invalid, (4) deeming certain portions of the Holt County zoning regulations invalid, and (5) restraining the county from enforcing the zoning regulations as written and ordering the county to pay $89 in costs.

Premium Farms asserts in its cross-appeal, rephrased, that the district court erred in failing to find that article 4, § 3.3, and article 1, § 2.18, of the Holt County zoning regulations were invalid pursuant to the plain meaning of § 23-114.03.

## STANDARD OF REVIEW

■ Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Interest of S.B., ante* p. 175, 639 N.W.2d 78 (2002); *In re Interest of DeWayne G. & Devon G., ante* p. 43, 638 N.W.2d 510 (2002).

■ The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary. *Gas 'N Shop v. City of Kearney*, 248 Neb. 747, 539 N.W.2d 423 (1995).

## ANALYSIS

■ The county asserts the district court erred in failing to find § 23-114.03 ambiguous. A statute is open for construction when the language used requires interpretation or may reasonably be considered ambiguous. *Sydow v. City of Grand Island, ante* p. 389, 639 N.W.2d 913 (2002). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id.* In construing a statute, an appellate court should consider the statute's plain meaning "in pari materia and from [its] language as a whole to determine the intent of the Legislature." *Alegent Health Bergan Mercy Med. Ctr. v. Haworth*, 260 Neb. 63, 70, 615 N.W.2d 460, 466 (2000). See, also, *In re Interest of DeWayne G. & Devon G., supra.* Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Interest of S.B., supra.*

Section 23-114.03, enacted in 1967, requires counties to adopt a county-wide "comprehensive development plan" prior to enacting zoning regulations. It also directs counties to obtain "specific recommendations" from the county planning commission concerning any proposed zoning regulations. The statute then lists 14 factors a county should consider in formulating zoning regulations. Thus, § 23-114.03 provides Nebraska counties with a statutory framework to use when adopting zoning regulations.

The disputed language in the present appeal occurs in a separate paragraph of § 23-114.03 which addresses the division of

a county into districts and the procedure for adopting official district maps. Within this paragraph, § 23-114.03 grants the counties the power to "regulate, restrict, or prohibit the erection, construction, reconstruction, alteration, or use of nonfarm buildings or structures and the use, conditions of use, or occupancy of land." Applying the principle of "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of the others), the positive grant of authority in § 23-114.03 to regulate the "erection, construction, reconstruction, alteration, or use of nonfarm buildings or structures" prohibits the county from exercising this same regulatory power with respect to farm buildings. See *Pfizer v. Lancaster Cty. Bd. of Equal.*, 260 Neb. 265, 272, 616 N.W.2d 326, 335 (2000). Farm buildings are then effectively defined by § 23-114.03 as "buildings utilized for agricultural purposes on a farmstead of twenty acres or more which produces one thousand dollars or more of farm products each year." There is no dispute that Premium Farms' hog confinement facility is a farm building pursuant to § 23-114.03.

The issue before this court is the breadth of the farm building exemption contained in § 23-114.03. Premium Farms argues the district court correctly found that § 23-114.03 prohibits counties from enacting any zoning regulations regarding farm buildings. The county disagrees, contending that the district court's plain meaning interpretation of § 23-114.03 conflicts with language contained elsewhere in § 23-114.03.

We first note that § 23-114.03 on its face simultaneously grants counties the authority to regulate all "use of land," while denying the authority to regulate "use" of farm buildings. The county asserts these two propositions are inherently conflicting. The district court in its order addressed the county's contention by determining that for purposes of § 23-114.03, the "use of a farm building, i.e., the interior within the confines of the roof, walls, and flooring, does not constitute the use of land within the meaning of § 23-114.03." We do not agree.

Land use does not stop at the walls of a building. Instead, land use is inextricably interwoven with what occurs on the inside and the outside of buildings. As noted in the district court's order, "the use or consequences of use of [a] building" affect land use because the consequences of the building use may "exit therefrom

onto, across, or under the land." Furthermore, § 23-114.03 does not state that the county's authority to regulate land use stops at the farm building walls. In fact, the word "nonfarm" does not appear in the clause of § 23-114.03 granting counties the authority to regulate land use.

Additionally, when § 23-114.03 is considered in pari materia with other related statutes, further conflicts arise. Section 23-114.03 states that it operates "[w]ithin the area of jurisdiction and powers established by section 23-114 . . . ." At the same time § 23-114.03 was enacted, Neb. Rev. Stat. § 23-114 (Cum. Supp. 1998) was also amended to specifically grant counties the authority to regulate "the uses of land for agriculture." § 23-114(2)(g). The broad authority to regulate agricultural land use contained in § 23-114 conflicts with the plain meaning of § 23-114.03 because regulating agricultural land use and regulating farm building use are clearly intertwined.

The plain meaning of § 23-114.03 as found by the district court also cannot be reconciled with Neb. Rev. Stat. § 23-174.10 (Reissue 1997). Section 23-174.10, enacted 4 years prior to the enactment of § 23-114.03, grants counties the authority to regulate, inter alia, the "construction . . . [of] sheds, stables, [and] barns." Section 23-114.03 would, under the district court's interpretation, clearly prohibit the county from regulating the construction of all sheds, stables, and barns "utilized for agricultural purposes on a farmstead of twenty acres or more which produces one thousand dollars or more of farm products each year." This interpretation, by implication, would effectively repeal portions of § 23-174.10. Repeal by implication is strongly disfavored, unless made necessary by the evident intent of the Legislature. *State v. Null*, 247 Neb. 192, 526 N.W.2d 220 (1995); *Hamilton v. Hamilton*, 242 Neb. 687, 496 N.W.2d 507 (1993); *Hammond v. City of Broken Bow*, 239 Neb. 437, 476 N.W.2d 822 (1991); *Nebraska Equal Opp. Comm. v. State Emp. Retirement Sys.*, 238 Neb. 470, 471 N.W.2d 398 (1991).

Regarding statutory construction, we are guided by the presumption that the Legislature intended a sensible, rather than an absurd, result in enacting the statute. *Nicholson v. General Cas. Co. of Wis.*, 262 Neb. 879, 636 N.W.2d 372 (2001). Applying the plain meaning of § 23-114.03 as found by the district

court does not lead to a sensible result in this case. As discussed above, regulating land use is inextricably interwoven with regulating the use of buildings. Additionally, the district court's interpretation of § 23-114.03 conflicts with the regulatory authority granted to Nebraska counties under §§ 23-114(2)(g) (authorizing counties to regulate agricultural land use) and 23-174.10 (authorizing counties to regulate construction of sheds, stables, and barns).

■ A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute, or when considered in pari materia with any related statutes. *Fontenelle Equip. v. Pattlen Enters.*, 262 Neb. 129, 629 N.W.2d 534 (2001); *Affiliated Foods Co-op v. State*, 259 Neb. 549, 611 N.W.2d 105 (2000); *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 602 N.W.2d 465 (1999). Accordingly, because § 23-114.03 cannot be adequately understood from the plain meaning of the statute or when considered in pari materia with related statutes, we determine that § 23-114.03 is ambiguous.

■ When a statute is ambiguous and must be construed, the principal objective is to determine and give effect to the legislative intent of the enactment. *Fontenelle, supra.* See, also, *In re Guardianship of Sain*, 211 Neb. 508, 319 N.W.2d 100 (1982). In construing a statute, a court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served. *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999). The court must place on the statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat the statute's purpose. *Id.* In construing an ambiguous statute, a court may examine the legislative history of the act in question to assist in ascertaining the intent of the Legislature. *Sydow v. City of Grand Island,* ante p. 389, 639 N.W.2d 913 (2002); *In re Estate of Eickmeyer*, 262 Neb. 17, 628 N.W.2d 246 (2001).

Section 23-144.03 was enacted as part of L.B. 463. In its original form as presented to the Committee on Government and Military Affairs, L.B. 463 stated in pertinent part:

> [T]he county board may . . . regulate, restrict, or prohibit the erection, construction, reconstruction, alteration, or use

of buildings, or structures, and the use, conditions of use, or occupancy of land. . . .

. . . The county board shall provide for enforcement of the zoning regulations within its county by requiring the issuance of permits prior to the erection, construction, reconstruction, alteration, repair, or conversion of any building or structure within a zoned area . . . .

At the committee hearing on L.B. 463, several people testified. One of the persons testifying was Senator Doug Bereuter, who stated:

I would like to emphasize again that we are not under this bill authorizing zoning by counties. The counties already have that power. They have the power to regulate agriculture land use, industrial land use, commercial land use, residential land use zoning, and they are doing it now. The only point is, are they doing it properly? One of the things that is included in here is provisions relating to the securing of building permits existing under legislation now. An amendment which, a series of amendments in fact, which have been introduced at the request of a number of bodies including another state agency and two farm organizations are here and we are in complete agreement with them. One of the things they do [is] exempt farm buildings from building permits. Ordinarily this is done by the county if they do the job properly like Seward County or Cass County but by putting it into the legislation we're [e]nsuring that farm buildings are exempted from zoning permits.

. . . .

. . . The feeling presented here is that farm buildings, farming itself is such a changing occupation and that many times buildings are built very rapidly and torn down just as rapidly and there are restrictions placed upon the location of these such as they must be set back so many yards from the highway. These still hold but the actual reconstruction or conversion of an existing dwelling unit or a building of a new one, in most cases, these things are exempt from building permits. So we have written it into the statutes that way at the request of general individuals.

Committee Records, 77th Leg. 17 (Mar. 9, 1967).

Commissioner John Klinker, farmer and member of the Douglas County Planning Commission, stated:

> In Douglas County, of course, we require no permits on farm buildings but we do require a permit on a farm dwelling. We do require the farm buildings to conform to our other regulations as far as set back and this sort of thing which is also to the benefit of the farmer.

*Id.* at 27.

The following pertinent amendments were thereafter added to L.B. 463 by the Committee on Government and Military Affairs, as indicated by italics:

> [T]he county board may . . . regulate, restrict, or prohibit the erection, construction, reconstruction, alteration, or use of *nonfarm* buildings, or structures, and the use, conditions of use, or occupancy of land. . . . [Enacted as part of § 23-114.03.]
>
> . . . The county board shall provide for enforcement of the zoning regulations within its county by requiring the issuance of permits prior to the erection, construction, reconstruction, alteration, repair, or conversion of any *nonfarm* building or structure within a zoned area . . . . [Enacted as part of § 23-114.04.]

Later, when L.B. 463 was first presented to the full Legislature, its introducer, Senator Rick Budd, stated:

> This bill . . . is permissive and the county board takes this action [of adopting zoning regulations] only if they so desire. If they do, why then they can set up this planning commission and what it [L.B. 463] does then is define the guidelines which they will follow. In the second section of the bill, it points out the limitations of the commission as we go into the third section, it sets out exactly what a comprehensive plan is and this is necessary for good planning and zoning. The fourth section defines the zoning regulations and of course this is all approved then by the county board. And we get into taking the farm buildings out of the bill, it requires that building permits be—if they adopt a comprehensive plan then it is necessary to have building permits. But of course, the farm buildings are excluded from this. It also makes it possible that they can have a

building inspector and section 6 sets out the penalties for failure to comply . . . .
Floor Debate, 77th Leg. 1735 (May 3, 1967).

L.B. 463, among other things, authorized counties to issue building permits pursuant to Neb. Rev. Stat. § 23-114.04 (Reissue 1997). Section 23-114.04 states that the county board shall require "the issuance of permits prior to the erection, construction, reconstruction, alteration, repair, or conversion of any nonfarm building or structure." We note that while the word "permit" does not appear in § 23-114.03, building permits were clearly included in that portion of L.B. 463 enacted as § 23-114.04. The fact that the Legislature added the word "nonfarm" to §§ 23-114.03 and 23-114.04 supports the comments made during the committee hearing on L.B. 463, which indicate that the purpose of amending L.B. 463 to include the word "nonfarm" was to exempt farm buildings from county building permit requirements.

The legislative history further shows that the reason for exempting farm buildings from county building permit requirements is that farm buildings are frequently constructed, reconstructed, and altered due to the changeable nature of farming. The legislative history does not support the contention that § 23-114.03 exempts farm buildings from all county zoning regulations. As Senator Bereuter stated in his comments, "there are restrictions placed upon the location of these [farm buildings] such as they must be set back so many yards from the highway. These still hold . . . ." Committee Records, L.B. 463, 77th Leg. 17 (Mar. 9, 1967).

As this court has often stated, a court will construe statutes relating to the same subject matter together so as to maintain a consistent, harmonious, and sensible scheme. See, *In re Interest of DeWayne G. & Devon G., ante* p. 43, 638 N.W.2d 510 (2002); *In re Estate of Eickmeyer*, 262 Neb. 17, 628 N.W.2d 246 (2001). Interpreting § 23-114.03 to exempt farm buildings from county building permit requirements creates a consistent, harmonious, and sensible scheme. Under such an interpretation, counties may regulate land use pursuant to §§ 23-114(2)(g) and 23-114.03 without concerns that such regulations will run afoul of the farm building exemption contained in § 23-114.03. This interpretation

is also harmonious with § 23-174.10 because nothing contained in § 23-174.10 authorizes or requires counties to issue building permits for farm buildings. Finally, this court's conclusion that the farm building exemption contained in § 23-114.03 was intended to apply to county building permit requirements is consistent with the legislative history of § 23-114.03.

Accordingly, based upon the foregoing analysis, we determine that the farm building exemption contained in § 23-114.03 prohibits counties from requiring building permits on "buildings utilized for agricultural purposes on a farmstead of twenty acres or more which produces one thousand dollars or more of farm products each year."

## HOLT COUNTY ZONING REGULATIONS

The county also asserts the district court erred in finding that certain portions of the Holt County zoning regulations were invalid. We agree.

The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary. *Gas 'N Shop v. City of Kearney*, 248 Neb. 747, 539 N.W.2d 423 (1995). Upon reviewing the Holt County zoning regulations, we find no provisions which require Premium Farms to obtain a building permit from the county prior to commencing construction of a CLO. Instead, the regulations require Premium Farms to obtain a conditional use permit to operate a CLO. The requirements for obtaining the use permit do not set forth any standards related to construction, reconstruction, or alteration of a farm building. Instead, the regulations primarily require CLO's to adhere to certain standards concerning manure removal and setbacks. These land use regulations are within the statutory authority of the county pursuant to §§ 23-114(2)(g), 23-114.03, and 23-174.10.

We therefore determine that the zoning regulations declared invalid by the district court do not exceed the county's authority pursuant to § 23-114.03.

## CROSS-APPEAL

Given our determination regarding Holt County's assignments of error, we find Premium Farms' cross-appeal to be without merit.

## CONCLUSION

The decision of the district court in finding that article 3, § 3.2; article 4, §§ 2.1(b), 3.1, and 2.3(a); article 8, §§ 3, 4, and 5; article 10, § 3.1(a) and (b); article 13, § 2; and portions of article 12 were in violation of § 23-114.03, and enjoining the county from enforcing said regulations is reversed. The cause is remanded to the district court with directions to modify its grant of partial summary judgment in favor of Holt County, with a finding that the above-stated Holt County zoning regulations are not in violation of § 23-114.03.

AFFIRMED IN PART AS MODIFIED, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

STEPHAN, J., not participating.