JAMES JOHNSON, APPELLEE, V.
MIKE KENNEY, APPELLANT.
654 N.W.2d 191

Filed December 20, 2002.   No. S-02-202.

Don Stenberg, Attorney General, and Linda L. Willard for appellant.

Stephanie J. Garner Kotik, of Kleveland Law Offices, for appellee, and, on brief, James Johnson, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

James Johnson pled guilty to charges of delivery of a controlled substance and being a habitual criminal, and he was sentenced to 10 years' imprisonment. Johnson subsequently filed a petition seeking habeas corpus relief, alleging that pursuant to Neb. Rev. Stat. § 83-1,107(1) (Reissue 1994), he was entitled to have his sentence reduced by 6 months for each year of the sentence and that as a result of not receiving such sentence reduction, he was being wrongfully held. (Although § 83-1,107 has subsequently been amended, all references in this opinion are to Reissue 1994.) The district court for Lancaster County found that Johnson was being detained without legal authority and ordered that he be discharged from the custody of the Department of Correctional Services (Department). Mike Kenney, warden of the Nebraska State Penitentiary, appeals.

## SCOPE OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002).

## FACTS

On September 16, 1996, Johnson pled guilty to charges of delivery of a controlled substance and being a habitual criminal. Thereafter, he was sentenced to a term of 10 years' imprisonment with credit for 243 days previously served.

On March 12, 2001, Johnson filed a pro se petition for writ of habeas corpus, seeking relief under Neb. Rev. Stat. § 29-2801 et seq. (Reissue 1995). Johnson alleged that pursuant to Nebraska's "good time statute," § 83-1,107(1), he was entitled to have his sentence reduced by 6 months for each year of the sentence, and that Kenney had failed to give him that credit. Johnson claimed that as a result of Kenney's failure to give Johnson good time credit, he was being wrongfully held by the Department.

Johnson was sentenced pursuant to Neb. Rev. Stat. § 29-2221(1) (Reissue 1995), which requires a mandatory minimum term of 10 years in prison for a habitual criminal conviction. Throughout these proceedings, Kenney has maintained that good time credit required by § 83-1,107(1) does not apply to a mandatory minimum sentence imposed under § 29-2221(1).

The trial court found that Johnson was entitled to receive good time credit of 6 months for each year of the sentence imposed. The court concluded that with a proper application of good time credit, the maximum portion of Johnson's sentence should have been reduced to 5 years. Finding that no evidence had been presented to establish that Johnson had lost any of his good time credit, the court determined that Johnson was being detained without legal authority and ordered that he be discharged. Kenney filed a timely notice of appeal, and we granted Johnson's petition to bypass.

## ASSIGNMENT OF ERROR

Kenney asserts, restated, that the trial court erred in finding that good time credit applies to mandatory minimum sentences imposed on habitual criminals under § 29-2221(1).

## ANALYSIS

The issue presented is one of statutory interpretation: whether the good time credit set forth in § 83-1,107(1) applies to the mandatory minimum sentence imposed upon Johnson pursuant to § 29-2221(1). We first set forth the relevant portions of each statute.

Before it was amended by 1995 Neb. Laws, L.B. 371, § 29-2221 provided that the minimum sentence imposed on a person found to be a habitual criminal was a term of not less than 10 years. See § 29-2221 (Cum. Supp. 1994). As amended by L.B. 371, § 29-2221(1) provides that a habitual criminal "shall be punished by imprisonment . . . for a mandatory minimum term of ten years and a maximum term of not more than sixty years." L.B. 371 became operative on September 9, 1995, and is applicable to Johnson's case.

The relevant version of § 83-1,107 provides:

(1) The chief executive officer of a facility shall reduce the term of a committed offender by six months for each

year of the offender's term and pro rata for any part thereof which is less than a year. The total of all such reductions shall be credited from the date of sentence, which shall include any term of confinement prior to sentence and commitment as provided pursuant to section 83-1,106, and shall be deducted:

(a) From the minimum term, to determine the date of eligibility for release on parole; and

(b) From the maximum term, to determine the date when discharge from the custody of the state becomes mandatory.

In granting Johnson habeas corpus relief, the trial court stated it was clear that § 29-2221(1) required a sentencing court in every case to impose a mandatory minimum sentence of 10 years. It noted, however, that such a requirement did not answer the question of whether Johnson, who received a straight sentence of 10 years, which represented both the mandatory minimum and the maximum sentence, was entitled to receive good time credit against his sentence.

The trial court stated that although the imposition of a mandatory minimum sentence affects a person's eligibility for probation and parole, § 83-1,107 does not address the effect imposition of a mandatory minimum sentence has on the application of good time credit to the maximum portion of the sentence. In essence, the court concluded that § 83-1,107 does not specifically exclude application of good time to the maximum portion of the sentence when a mandatory minimum sentence has been imposed. Finding no ambiguities in § 83-1,107, the court stated there was no need to resort to judicial interpretation nor any need to look to the legislative intent.

We disagree with the trial court's finding that § 83-1,107 is not ambiguous. A statute is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous. *State v. Hochstein and Anderson*, 262 Neb. 311, 632 N.W.2d 273 (2001). A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes. *Premium Farms v. County of Holt*, 263 Neb. 415, 640 N.W.2d 633 (2002). It is undisputed that a

habitual criminal sentenced under § 29-2221 may not be released on parole until the individual has served the mandatory minimum sentence of 10 years. The fact that § 83-1,107 does not address whether good time may be applied to the maximum term of the sentence when the mandatory minimum and the maximum term are the same number of years gives rise to the ambiguity.

When the relevant statutes are considered in pari materia, the intent of habitual criminal sentencing is thwarted if good time credit is applied to the maximum term of the sentence before the mandatory minimum sentence has been served. The minimum portion of the sentence would have no meaning.

In 1992, the Legislature passed L.B. 816, which made significant changes to the law regarding good time credit for criminal offenders under § 83-1,107. In explaining one of the purposes of the changes, the introducer, Senator Ernie Chambers, stated:

> The other significant effects of this bill is [sic] that no one will become eligible for parole after their mandatory discharge date. . . . Under the current law, a person can reach a date when they must be discharged before they are even eligible to be considered for parole. Since they must mandatorily be discharged before the Parole Board can even consider their case, there is no way for there to be Parole Board supervision.

Floor Debate, 92d Leg., 2d Sess. 7678 (Jan. 14, 1992).

Under the trial court's interpretation, the application of good time credit to the maximum portion of the sentence would result in a mandatory discharge before Johnson was eligible for parole under the minimum portion of the sentence. Johnson's maximum sentence and mandatory minimum sentence are both 10 years. Although he could not be released on parole, Johnson would receive a mandatory discharge from custody after only 5 years if good time reductions were applied to the maximum portion of the sentence.

Section 29-2221(1) requires that a habitual criminal "shall be punished by imprisonment . . . for a mandatory minimum term of ten years." It is clear the Legislature intended that imposition of a mandatory minimum sentence would result in a person's not being eligible for parole until the mandatory minimum sentence had been served. It would not serve the legislative intent if a

defendant could be mandatorily discharged before being eligible for parole.

The language of § 83-1,107 cannot be adequately understood when considered in pari materia with related statutes. See *Premium Farms v. County of Holt*, 263 Neb. 415, 640 N.W.2d 633 (2002). In construing a statute, a court must look to the statute's purpose and give the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *State v. Portsche*, 261 Neb. 160, 622 N.W.2d 582 (2001). In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002).

Prior to its amendment, § 29-2221 provided that the sentence for a habitual criminal would be not less than 10 years. Section 29-2221 was subsequently amended to state that the sentence would be a mandatory minimum term of 10 years. If, in a subsequent enactment on the same or similar subject, the Legislature uses different terms in the same connection, a court interpreting the subsequent enactment must presume that the Legislature intended a change in the law. *State v. Portsche*, 258 Neb. 926, 606 N.W.2d 794 (2000).

Therefore, presuming that the Legislature intended a change in § 29-2221, we look to the legislative history concerning L.B. 371 in order to determine the Legislature's intent. The "Summary of L.B. 371 Referenced to the Judiciary Committee," which accompanied the Introducer's Statement of Intent, provided: "Habitual Criminal Sentencing . . . No person sentenced to a mandatory term under these statutes would be eligible for probation or reductions for 'good time.'" Judiciary Committee Hearing, 94th Leg., 1st Sess. (Feb. 8, 1995). The floor debate concerning L.B. 371 also supports this position.

From our review of the legislative history, we conclude the Legislature did not intend that good time credit under § 83-1,107(1) would apply to reduce mandatory minimum sentences imposed on habitual criminals under § 29-2221. Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to

reach an independent conclusion irrespective of the decision made by the court below. *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002).

## CONCLUSION

The trial court erred in finding that good time credit under § 83-1,107(1) applies to mandatory minimum sentences imposed on habitual criminals pursuant to § 29-2221(1). The judgment of the trial court is reversed, and the cause is remanded with directions to dismiss Johnson's petition for writ of habeas corpus.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.