742 N.W.2d 773 (2007)
16 Neb. App. 222
Vasile HURBENCA, appellant,
v.
NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, appellee.
No. A-06-945.
Court of Appeals of Nebraska.
December 4, 2007.
*775 Vasile Hurbenca, pro se.
Jon Bruning, Attorney General, and Stephanie A. Caldwell, for appellee.
SIEVERS, CARLSON, and CASSEL, Judges.
SIEVERS, Judge.
Appellant argues in this appeal that the computation of his prison sentence was incorrect because his mandatory minimum sentence of 10 years under Neb.Rev.Stat. § 29-2221 (Reissue 1995) should have been reduced for "good time" pursuant to Neb. Rev.Stat. § 83-1,108 (Reissue 1987). We have directed that the appeal be submitted without oral argument under Neb. Ct. R. of Prac. 11 (rev.2006).

FACTUAL AND PROCEDURAL BACKGROUND
On September 25, 1986, Vasile Hurbenca was sentenced in Douglas County to 6 to 20 years' imprisonment for theft and 4 years' imprisonment for attempting to procure fraudulent title, sentences to be served consecutively. This resulted in a total term of 6 to 24 years' imprisonment.
On December 8, 1987, Hurbenca was sentenced in Lancaster County for attempted escape and received a consecutive sentence of 1 year's imprisonment. This made his sentence a total term of 6 to 25 years' imprisonment.
On December 10, 1991, Hurbenca was sentenced in Douglas County for false application for a motor vehicle and received a sentence consecutive to others recounted above of 1 year 7 months' to 5 years' imprisonment. This resulted in a total term of 7 years 7 months' to 30 years' imprisonment.
On February 23, 1996, Hurbenca was sentenced in Douglas County for possession of a deadly weapon by a felon and received a sentence consecutive to others recounted above of 10 to 15 years' imprisonment under the habitual criminal statute, § 29-2221. This resulted in a total term of 17 years 7 months' to 45 years' imprisonment.
On September 17, 2002, Hurbenca was sentenced in Lancaster County for escape and received a sentence of 10 to 15 years' imprisonment under the habitual criminal statute to be served consecutively to his other sentences. This resulted in a total term of 27 years 7 months' to 60 years' imprisonment.
After this last conviction and sentence, the Nebraska Department of Correctional Services (DCS) computed Hurbenca's parole eligibility date to be August 18, 2008, and his discharge date to be May 28, 2019. This was computed by adding the 10-year mandatory minimum sentence to Hurbenca's previous parole eligibility date of August 18, 1998, and to his previous discharge date of May 28, 2009.
On December 5, 2005, Hurbenca filed an action in the district court for Johnson County pursuant to Neb.Rev.Stat. §§ 25-21,149 through 25-21,164 (Reissue 1995 & Cum.Supp.2006), seeking declaratory relief because DCS had inaccurately calculated *776 his prison sentence. On August 23, 2006, the district court, analyzing Hurbenca's claims using Johnson v. Kenney, 265 Neb. 47, 654 N.W.2d 191 (2002), declared that the computation of Hurbenca's parole and discharge dates was correct. Hurbenca timely appealed.

ASSIGNMENTS OF ERROR
Hurbenca assigns, restated, the following errors to the district court: (1) its finding that § 83-1,108 is ambiguous and subject to interpretation and (2) its failing to apply § 83-1,108 to the 10-year mandatory minimum portion of his prison sentence.

STANDARD OF REVIEW
Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. State v. Mather, 264 Neb. 182, 646 N.W.2d 605 (2002).

ANALYSIS
The issue presented is one of statutory interpretation: whether the good time credit set forth in § 83-1,108 applies to the mandatory minimum sentence imposed upon Hurbenca pursuant to § 29-2221(1). Hurbenca's sentence was properly calculated based on the Supreme Court case of Johnson v. Kenney, supra.
In Johnson, James Johnson had been sentenced under § 29-2221(1), the habitual criminal law, which carries a mandatory minimum sentence of 10 years' imprisonment. The question was whether Neb. Rev.Stat. § 83-1,107 (Reissue 1994), the then applicable "good time" statute, should apply to the mandatory minimum sentence given to Johnson. The relevant portions of § 83-1, 107 read as follows:
(1) The chief executive officer of a facility shall reduce the term of a committed offender by six months for each year of the offender's term and pro rata for any part thereof which is less than a year. The total of all such reductions shall be credited from the date of sentence, which shall include any term of confinement prior to sentence and commitment as provided pursuant to section 83-1,106, and shall be deducted:
(a) From the minimum term, to determine the date of eligibility for release on parole; and
(b) From the maximum term, to determine the date when discharge from the custody of the state becomes mandatory.
The Supreme Court found that this statute was ambiguous as to whether it applied to mandatory minimum sentences like Johnson's, stating:
A statute is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous.... A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes.... It is undisputed that a habitual criminal sentenced under § 29-2221 may not be released on parole until the individual has served the mandatory minimum sentence of 10 years. The fact that § 83-1,107 does not address whether good time may be applied to the maximum term of the sentence when the mandatory minimum and the maximum term are the same number of years gives rise to the ambiguity.
Johnson v. Kenney, 265 Neb. at 50-51, 654 N.W.2d at 194 (citations omitted).
The Supreme Court then said, "When the relevant statutes are considered in pari materia, the intent of habitual criminal sentencing is thwarted if good time credit is applied to the maximum term of the *777 sentence before the mandatory minimum sentence has been served. The minimum portion of the sentence would have no meaning." Id. at 51, 654 N.W.2d at 194.
Here our analysis of Hurbenca's sentence and the application of § 83-1,108 is the same as the Supreme Court's analysis in Johnson v. Kenney, 265 Neb. 47, 654 N.W.2d 191 (2002). Hurbenca was sentenced to a mandatory minimum of 10 years' imprisonment under § 29-2221, just like Johnson. And although a different "good time" statute was applicable to Hurbenca (§ 83-1,108) than was to Johnson (§ 83-1,107), the following language in § 83-1,108 was also ambiguous:
(1) The Board of Parole shall reduce for good conduct in conformity with the conditions of his parole, a parolee's parole term by two days for each month of such term. The total of such reductions shall be deducted from his maximum term, less good time reductions granted under the provisions of sections 83-1,107 and 83-1,107.01, to determine the date when his discharge from parole becomes mandatory.
(2) Reductions of the parole terms may be forfeited, withheld, and restored by the Board of Parole after the parolee has been consulted regarding any charge of misconduct or breach of the conditions of his parole.
Section 83-1,108 is ambiguous when compared in pari materia to § 29-2221, the habitual criminal statute requiring a mandatory minimum prison sentence of 10 years, because it makes no mention of mandatory minimum sentences, and therefore gives no instruction on whether "good time" should be applied against the maximum sentence before the mandatory minimum sentence is served.
The Supreme Court's reasoning in Johnson, supra, is applicable here, which is that it would thwart the intent of habitual criminal sentencing if good time credit is applied to the maximum term of the sentence before the mandatory minimum sentence has been served. The minimum portion of the sentence would have no meaning. It is called a "mandatory" sentence for a reason, and the Legislature's language in § 83-1,108 gives no indication that the mandatory nature of the minimum sentence under the habitual criminal statute was to be altered. Therefore, DCS and the trial court correctly calculated Hurbenca's prison sentence, parole eligibility, and mandatory discharge dates under § 29-2221 by not applying "good time credit" under § 83-1,108 before the mandatory minimum sentence was served.
Hurbenca also asserts that the facts in this case are different than the facts in Johnson, supra. Hurbenca states that his sentence is a consolidated sentence and that he had received a consecutive sentence while serving his original sentence, while Johnson's sentence was not a consolidated or consecutive sentence. But these distinctions make no difference. That Hurbenca is serving multiple or consecutive sentences whereas Johnson was serving only a single sentence does not affect the issues in this case: whether § 83-1,108 is ambiguous, and if so, whether § 83-1,108 should be applied against the mandatory minimum prison sentence of § 29-2221. Having resolved those issues, and utilizing the precedent of Johnson, the differences between Hurbenca's and Johnson's prison sentences do not support a different result in this case man in Johnson.

CONCLUSION
We find that § 83-1,108 when compared in pari materia with § 29-2221 is ambiguous and that the Supreme Court's ruling in Johnson v. Kenney, 265 Neb. 47, 654 N.W.2d 191 (2002), is applicable in interpreting it. Therefore, DCS and the trial *778 court correctly determined that "good time" credit under § 83-1,108 should not be applied to Hurbenca's prison sentence before he has served the mandatory minimum sentence of 10 years' imprisonment under § 29-2221.
AFFIRMED.