Justice FLAHERTY
with whom Justice ROBINSON joins, dissenting.
I respectfully dissent from the majority’s opinion in this case. In my view, the entirety of the defendant’s twenty-year sentence has been administratively reduced by “Good-Time” credits as provided by G.L.1956 § 42-56-24 and by credit for time served awaiting disposition pursuant to G.L.1956 § 12-19-2(a). Thus, he has fulfilled all of the terms of his sentence: the periods of incarceration and probation. It is my further opinion that the good-time credits and credit for time served should be applied to the entirety of Rose’s sentence and not just the term of incarceration. Therefore, it is my conclusion that the majority effectively, but without citing any statutory authority to do so, has extended Rose’s probation.
“Good-Time” Credits
This Court has not discussed previously the interplay between mandatory minimum sentencing and administrative deductions, such as good-time credits, and to me, the majority appears to be overly focused on the implausibility of a deduction if that results in a sentence that falls below the terms called for by a statutory minimum. The effect of the majority’s opinion is twofold. First, the majority, in effect, en-grafts a new section onto the statute, restricting the application of good-time credits should those credits result in a sentence that falls below a mandatory minimum. Second, the majority, by necessary implication, would extend probation beyond that imposed by the sentencing justice.
I agree with the majority that § 42-56-24 is clear and unambiguous; therefore, “this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.” State v. Hazard, 68 A.3d 479, 485 (R.I.2013) (quoting Alessi v. Bowen Court Condominium, 44 A.3d 736, 740 (R.I.2012)). However, it is also true that this Court has made it crystal clear that, “[i]t is generally presumed that the General Assembly ‘intended every word of a statute to have a useful purpose and to have some force and effect.’ ” State v. Briggs, 58 A.3d 164, 168 (R.I.2013) (quoting Curtis v. State, 996 A.2d 601, 604 (R.I.2010)). Indeed, we have held that the plain statutory language is the best indicator of legislative intent. State v. Santos, 870 A.2d 1029, 1032 (R.I.2005). Although the majority correctly construes the statute as a legislatively-crafted means for the Department of Corrections (DOC) to reward good behavior and industriousness, it is my opinion that the majority is in error by concluding that the only “ ‘sentence’ from which the Legislature intended the credits to be deducted is one of imprisonment.”
When we are called upon to resolve an inconsistency between two statutes that are in pari materia, “we construe them in a manner that attempts to harmonize them *914 and that is consistent with their general objective scope.” State v. Oliveira, 882 A.2d 1097, 1111 (R.I.2005). I conclude that the most effective way to harmonize the apparent inconsistency between the application of good-time credits under § 42-56-24 and the mandate of the twenty-year statutory minimum pursuant to G.L.1956 § 11-37-8.2 would be to apply earned good-time credits even if that application would result in a sentence that falls below a statutory minimum. This approach acknowledges the obligation of a trial justice to impose a statutory minimum sentence while nonetheless recognizing that administrative deductions that are provided for by statute can result in a defendant actually serving fewer years than the sentence initially imposed, as long as he has earned good-time credits.[12]
There is no argument that good-time credits impact directly the period of incarceration, but the thrust of Rose’s appeal surrounds the effect that the statutory deduction should have on the entirety of his sentence. The majority reasons that any deduction applies solely to the period of confinement, but, in my opinion, that interpretation is not consistent with the language of the statute. The statute, as it read in 1994, provided that a specified period of time shall “be deducted from the term or terms of sentence of that prisoner * * *.”[13] Random House defines “deduct” as “to take away, as from a sum or amount.” Random House Unabridged Dictionary 520 (2d ed.1993). Giving effect to every word of the statute, “the term or terms of sentence” should be read to equally include sentences with a term of twenty years with twenty years to serve, and those with multiple terms, as in this case, a twenty-year sentence with eight years to serve and twelve years suspended, with twelve years’ probation. Moreover, at the time that Rose was sentenced, the Legislature limited the applicability of § 42-56-24 only to those persons imprisoned for “six (6) months or more” but not “sentenced to imprisonment for life.” On its face, there is nothing in the statute that was in effect in 1994 that would limit the deduction of good-time credits from the whole of Rose’s sentence.[14]
The majority arrives at its construction of legislative intent using logical inferences in two ways. First, it seems to me that the majority focuses on the word “sentence” and equates “sentence” with “imprisonment” to support its interpretation. Second, the majority points out that the General Assembly amended § 42-56-24 in 2012 to limit its application, by stating that certain offenses “shall not be eligible to earn time off their term or terms of incarceration for good behavior.” See P.L.2012, ch. 150, § 1. However, it is significant that the General Assembly did not amend the language of § 42-56-24(a). The language in that section is the same today as it was in 1994, and it still retains the phrase “term or terms of sentence.” In my view, nothing cited to by the majority contravenes my conclusion that good-time credits reduce the entirety of sentence and not simply the period of incarceration.
In addition, I agree with the majority that the trial justice did not have the authority to impose a sentence below a statutory minimum and that his declaration at *915 sentencing that probation would commence “upon release” could not have the effect of reducing Rose’s sentence below twenty years. However, and significantly, the deduction in sentence emanated not from the trial justice, but from the General Assembly, when it enacted § 42-56-24.[15] When that statute was passed, the Legislature chose not to include a provision making good-time credits inapplicable should the result be a sentence less than a mandatory minimum. We generally presume that the Legislature knows what it is doing when it enacts statutes. See Brennan v. Kirby, 529 A.2d 633, 637-38 (R.I.1987). At the time of Rose’s conviction, the only people who were ineligible for good-time credits were those imprisoned for less than six months and those sentenced to life; there is no mention of mandatory minima. Indeed, when the General Assembly later amended § 42-56-24 to make certain offenses ineligible for good-time credits, it could have then made a blanket statement about the inapplicability of the good-time statute to offenses carrying a mandatory minimum, but it chose not to do so.[16]
Similar statutes in other jurisdictions expressly limit good-time credits in this way. In Delaware, certain statutes specifically provide that felons convicted for a crime carrying a statutory minimum sentence are not eligible for good-time credits. Woodward v. Department of Corrections, 415 A.2d 782, 783 (Del.Super.Ct.1980) (“[T]he Legislature has also provided that specific minimum sentences for certain types of convicted felons are mandatory and shall not be subject to suspension and no person shall be eligible for probation or parole during such portion of such minimum term.”), aff'd sub nom., Woodward v. State, 416 A.2d 1225 (Del.1980). In Nebraska, the Supreme Court has held that the Legislature specifically intended to exclude those convicted under a mandatory minimum sentence from the good-behavior statute because the Legislature amended the law after a previous iteration of the statute allowed an offender to be discharged prior to serving the minimum sentence specified by statute. Johnson v. Kenney, 265 Neb. 47, 654 N.W.2d 191, 194-95 (2002). On the other hand, in Minnesota, where there is no such prohibition, the Supreme Court concluded that a statutory minimum sentence of twenty-five years could be reduced by that state’s good-behavior statute. State v. Walker, 306 Minn. 105, 235 N.W.2d 810, 814 (1975).
It is also my view that a fair reading of the majority opinion would result in the elimination of the application of good-time credits for defendants serving a mandatory minimum period of incarceration where a period of suspended sentence and a period *916 of probation are not present. For example, a defendant serving a three-year statutory minimum with three years to serve for a third driving-under-the-influence offense under G.L.1956 § 31-27-2(d)(3)(ii) would have been eligible for good-time credits under § 42-56-24. However, the majority’s opinion could well eliminate good-time credits for this offender because the length of his sentence, after application of earned good-time credits, would fall below the prescribed minimum of three years. The General Assembly did not make that offense ineligible, but this Court appears poised to judicially amend the statute to do just that.
Indeed, the majority appears to reason that the application of good-time credits, under any scenario, even when there is no statutory minimum, could reduce only the period of incarceration because neither the General Assembly nor the Executive Branch has the authority to reduce the entire length of a judicially-imposed sentence. If administrative actions cannot modify the overall length of the sentence, taken to its logical conclusion, a defendant serving a five-year sentence without a probationary period would now incur a period of probation because he earned good-time credits. Whereas previously, this defendant would have “flattened,” meaning he would have fulfilled all the obligations of his sentence, under the majority’s reasoning, he would now be required to serve a period of probation equal to each day of good-time credits earned.[17]
Finally, the majority does not sufficiently address the thorny issue of explaining defendant’s status after good-time and time-served credits were applied and after he completed his parole, but before his probation began. When his parole ended in January 1999, Rose began serving his probation, which is now entering its sixteenth year, even though a twelve-year period of probation was imposed when he was sentenced. The majority provides no answer to this conundrum and essentially sanctions an extension of Rose’s probation without legislative foundation.[18] In my opinion, the majority attempts to wriggle out of this maze by stating that the imposition of additional terms of probation is not an “added burden” because Rose could have spent that time incarcerated. The majority reasons that probation is better than prison, so there should be no complaint.[19] To support this position, the majority cites two cases that are readily distinguishable from the issues raised in this appeal.
*917 First, the majority cites State v. Dantzler, 690 A.2d 338, 339 (R.I.1997), to support the proposition that Rose would still be under an implied condition of good behavior for the eighteen months of good-time credits he received. In Dantzler, the defendant had escaped from prison and committed a sexual assault while at large. Id. at 339. Dantzler argued that he could not be violated because, due to the fact that he was serving a sentence of incarceration, he was not yet on probation when he committed the sexual assault. Id. But Dantzler is inapposite because Dantzler was not arguing that his probation had terminated but, quite the contrary, that it had not yet commenced. Id. Also, the defendant in Dantzler had not earned any good-time or time-served credits that could have reduced his sentence. Rose, however, did earn those credits, and he has already served the required twelve years of probation. Well beyond the terms of his sentence, defendant has been serving his probation for the past fifteen years. The implied condition of good behavior may be ever present for the entirety of the sentence, but the very purpose of good-time credits is to reduce the duration of the entire sentence.
The majority also cites to Lee v. Kindelan, 80 R.I. 212, 95 A.2d 51 (1953), which is equally unpersuasive because in Lee, the Court considered the interplay of good-time credits and parole and held that reductions in sentence were not automatic. Id. at 222, 95 A.2d at 55-56. Lee argued that the applicable “Good Time Law” automatically reduced her sentence; however, this Court held that because Lee had not provided evidence that she had, in fact, earned the credits, she was not entitled to them. Id. at 221-22, 95 A.2d at 55. The Court indicated that the “Good Time Law” in Lee would have reduced the period of incarceration, but only to allow a defendant to begin parole, which was a conditional grant of liberty and not a reduction in the sentence. Id. at 222, 95 A.2d at 56. Not only did the defendant in Lee fail to demonstrate that she had earned any good-time credits, but she was seeking good-time credits so that she could be placed on parole, not probation. Id. at 215-16, 95 A.2d at 52-53; see Curtis, 996 A.2d at 605 (discussing that a parolee is at liberty while on parole “during the remainder of his or her term of sentence upon any [reasonable] terms and conditions”). This case bears little resemblance to Lee because Rose did earn good-time credits, which, in my opinion, should have been applied to the entirety of the sentence.
The majority’s reasoning would seem to support the notion that Rose would have eighteen months remaining under the implied condition of good behavior without the administrative requirements of probation.[20] As if anticipating this inconsistency, the majority states that “[r]egardless of the strings attached,” Rose was not burdened, no matter what his status was upon the completion of his parole. This declaration ignores our existing holdings on extensions of probation. We previously have held that the state and the defendant may not enter into an agreement to extend the defendant’s period of probation beyond *918 that period imposed by the sentencing justice. State v. Traudt, 679 A.2d 330, 331 (R.I.1996). We have also held that a trial justice is not cloaked with the authority to extend a defendant’s period of probation because the statute does not grant this specific power. State v. Rice, 727 A.2d 1229, 1231 (R.I.1999). Further, we have stated that the trial justice does not possess the statutory power to amend a sentence and that he is “bound by the terms of that sentence.” Id. The majority now appears to hold that this Court may extend a defendant’s probation. However, the majority cites no authority, judicial or legislative, to support its position that defendant’s period of probation may be extended beyond the twelve-year period fixed by the trial justice.
In my opinion, this Court also lacks the statutory authority to extend probation. The common application of the word “deduct” from § 42-56-24 would resolve this apparent paradox and provide the most just result for defendant. Deducting the good-time credits from the entirety of Rose’s sentence, just as the General Assembly has mandated, would remove eighteen months from the twenty-year sentence and not result in an unanticipated extension of probation. If, as discussed below, defendant’s entire sentence is further reduced by credits for time served, Rose will have served exactly the sentence that the intersecting statutes intended for him to serve: both the period of incarceration and the period of probation imposed by the trial justice.
Credit for Time Served
I also depart from the majority’s calculation of credit for time served under § 12-19-2. The Court’s holding today counters our previous pronouncements about the purpose of the statute regarding credit for time served, which was meant to result in equal time for an equal sentence to balance out the situation of the person who can make bail and the person who cannot. As cited by the majority, the statute rectifies this inequity by ensuring that “all persons sentenced to identical terms [will] * * * be deprived of their liberty for identical periods of time.” See State v. Holmes, 108 R.I. 579, 584, 277 A.2d 914, 917 (1971). In Holmes, 108 R.I. at 584, 277 A.2d at 917, we discussed the consequences of administrative reductions that result when credit for time served conflicts with judicial sentencing authority. In Holmes, the Court used the example of defendants A and B who both received a five-year mandatory minimum sentence, but defendant A had served already one year in pretrial confinement. Id. at 583, 277 A.2d at 916. The Court concluded that the trial justice would be required to sentence each defendant to at least five years, but that the DOC would have the authority to release defendant A one year earlier pursuant to § 12-19-2. Holmes, 108 R.I. at 585, 277 A.2d at 917. Therefore, the Court concluded, the application of the statute resulted in a sentence below the statutory minimum, but that this reduction was administrative, not judicial. Id.
The majority notes that we have not previously allowed any adjustment of a probationary period when credit for time served is applied, and, in so reasoning, it relies almost exclusively upon an order of this Court, State v. Bergevine, 883 A.2d 1158, 1159 n. 1 (R.I.2005) (mem.). However, in my judgment, the footnote cited by the majority from Bergevine does not support the notion that credit for time served is inapplicable to probationary sentences. Indeed, it says that “[t]his provision [of § 12-19-2(a) ] * * * is absolutely silent about such credit applying towards a probationary sentence or rendering a defendant’s sentencing date retroactive.” Bergevine, 883 A.2d at 1159 n. 1. The de *919 fendant in Bergevine was seeking to have his time-served credits be applied retroactively in a creative effort to avoid being violated for a subsequent offense. However, acceptance of Bergevine’s argument would have created the farcical result of the defendant being on probation even before he had been sentenced. Id. at 1158. In contrast, Rose argues that he be required to serve only the amount of probation to which he was sentenced after his release from incarceration. The majority holds that Bergevine has already decided this issue, no matter how Rose “intellectualize[s]” it, but I do not believe Bergevine rings with such clarity. Should this Court choose to now hold that the statute prevents time served from being applied to probationary sentences, it certainly may. However, in my opinion, this is plowing upon new ground because our narrow holding in Bergevine did not come to that conclusion.
To undergird its holding, the Bergevine Court appealed to common sense by quoting Justice William 0. Douglas, who authored Peak v. United States, 353 U.S. 43, 46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957). Bergevine, 883 A.2d at 1159 (“That seems to us to be the common sense of the matter[,] and common sense often makes good law.”). In my view, however, common sense would dictate that whether Rose was on bail prior to trial or confined, his sentence should be twenty years minus any earned good-time credits. The majority’s holding, in my opinion, results in Rose serving twenty-one years and three months simply because he was held prior to trial. Incarcerated or serving probation with the suspended sentence hanging over his head like the sword of Damocles, defendant nevertheless has served twenty years. As I see it, Rose is simply asking this Court to recognize that to which he is entitled under a plain reading of the law.
As is the case with § 42-56-24, § 12-19-2 does not bar the application of credit for time served if that application would result in an offender serving less than a statutory minimum. In fact, we have held that credit for time served was specifically applicable. See Holmes, 108 R.I. at 585, 277 A.2d at 917. Although § 12-19-2 employs the term “reduced” instead of “deducted” as does § 42-56-24, this is a distinction without a difference. The majority’s holding effectively requires Rose to make up the fifteen months he served at the Adult Correctional Institutions awaiting disposition by extending his probation, an extension that the statute simply does not authorize this Court to do. In my opinion, the outcome Rose seeks is exactly what the General Assembly designed. Rose’s period of incarceration was reduced, and he served the twelve years of probation foisted upon him, which, with good-time credits, results in the completion of his sentence thirty-three months earlier than if he had been released on bail and had not earned good-time credits. This result not only appeals to common sense and is the most just, it also conforms with our existing case law and resolves the majority’s unexplained foray into the limbo created by the inability to explain Rose’s status after his parole ended, but before his probation was supposed to start.
For the foregoing reasons, I respectfully dissent from the majority opinion in this case.

. Even though this case involved an offense carrying a statutory minimum, I would apply this same approach to sentencing in general.

. The defendant entered a plea of nolo con-tendere on March 14, 1994.

.The majority contends that the dissent seeks to construe G.L.1956 § 42-56-24 in Rose's favor. I respectfully disagree. I am merely saying that I agree with Rose’s argument that we should adhere to our jurisprudence with respect to statutory construction.

. The majority seems to suggest that there is a separation of powers or constitutional argument as to whether the General Assembly could direct the DOC to make reductions in sentence or whether the Executive Branch, even though cloaked with statutory authority, has the constitutional power to reduce the length of sentence. These arguments have not been a part of this case at any stage and were neither briefed nor argued by the parties. They should not now be introduced as mere dicta. Indeed, consideration of constitutional or separation of powers issues is utterly unnecessary in view of the fact that the majority decided this appeal by following traditional rules of statutory construction. See Grady v. Narragansett Electric Co., 962 A.2d 34, 41 n. 4 (R.I.2009) (discussing "our usual policy of not opining with respect to issues about which we need not opine”).

. In 2012, the General Assembly, for the first time, excluded certain offenses from eligibility for good-time credits. See P.L.2012, ch. 152, § l("(a) A person serving a sentence of a violation of [G.L.1956 §§ ] 11-5-1 (where the specified felony is murder), 11-23-1, 11-26-1.4, 11-37-2, 11-37-8.1 or 11-37-8.3 shall not be eligible to earn time off their term or terms of incarceration for good behavior”).

.To be fair, the majority is careful not to denominate the additional burden placed on Rose as probation, but it is difficult to see any other outcome. In State v. Dantzler, 690 A.2d 338, 339 (R.I.1997), this Court held that those sentences with probationary periods have an accompanying implied condition of good behavior throughout the term of the sentence, which would seem to indicate that the additional burden imposed on our hypothetical defendant could be fairly described only as a period of probation, or perhaps parole. Unfortunately, this approach appears to create more questions than it addresses and also seemingly judicially amends § 42-56-24 to include a new administrative burden on the DOC.

. Indeed, at oral argument, the state conceded that Rose was “effectively on probation” before the end of his original eight-year period of incarceration.

. The majority seems to ignore the fact that, unless he violated his probation, there was no option to continue to incarcerate defendant under the statutory scheme for good-time credits. See § 42-56-24. Once good-time credits were earned, the DOC was obligated under the statute to apply them and release defendant. "Legislative grace” may have created these credits, but the majority's view on defendant's argument that he has received extended probation is not persuasive.

. According to the DOC’s website those persons on probation must satisfy the following requirements:
"Probationers are supervised by a DOC Probation & Parole Officer. * * * Everybody on probation must follow the general conditions of probation, including reporting to the [probation officer] as required; not breaking any'laws; not traveling or moving out of Rhode Island without advance approval; advising the [probation officer] of any change of address immediately; and so on.” Department of Corrections, Probation and Parole FAQ <http://www.doc.ri.gov/ probation/faq.php> (last visited Feb. 7, 2014).